## GRAVES v. SEIFRIED et al.

No. 1731. Decided November 10, 1906 (87 Pac. 674).

1. LIMITATION OF ACTIONS—MORTGAGE FORECLOSURE—AVAILABILITY TO THIRD PERSONS.—Where a third person acquired an interest in mortgaged property under a tax deed, she could invoke the statute of limitations as against the mortgagee, though it may have been waived by, or not available to, the mortgagor.

2. SAME—RIGHT UNDER DEFECTIVE TAX DEED.—The fact that the tax deed under which defendant claimed an interest in mortgaged property, was so defective as to be inoperative to convey good title, did not prevent her from pleading limitation against the mortgagee; her equitable lien giving her sufficient interest in the property.

3. BUILDING AND LOAN ASSOCIATION — INSOLVENCY — LIMITATION OF ACTIONS—ACCRUAL OF RIGHT—MORTGAGES.—Since the appointment of a receiver to wind up the affairs of an insolvent building and loan association works a practical dissolution of the association, and the mortgage indebtedness of its borrowing members becomes immediately due when an association went into a receivers hands, the statute of limitations began to run against an unmatured mortgage held by it.

APPEAL from District Court, Weber County; J. A. Howell, Judge.

Action by Edward B. Graves, receiver, against Flora I. Seifried and others. From the judgment, plaintiff appeals.

AFFIRMED.

*Henderson & Macmillan* for appellant.

*John E. Bagley* for respondents.

APPELLANT'S POINTS.

The law of this state is so well settled that a purchaser at a tax sale, relying upon his tax deed has the burden of showing the regularity of all the proceedings and that if one of the steps to be taken fails it is as vital as though all failed. (*Oleson v. Bagley,* 10 Utah 495; *Eastman v. Gurrey,* 15 Utah 417, 418; *Jungk v. Snyder,* 28 Utah 7; *Aspen v. Moon,* 24 Utah 246, 248; *Moon v. Salt Lake,* 27 Utah 435; *Black on Tax Titles,* section 154, 155; *Brookings v. Woodin,* 74 Me. 222; *Marks v. Hawthorne,* 148 U. S. 172.)

A mistake in the name vitiates the title. (*Asper v. Moon,* 24 Utah 246, 248.)

This court has held that the serving of notice must be shown; that this is jurisdictional and that the omission to give the notice is not a mere irregularity, but a vital defect.

(*Oleson v. Bagley,* 10 Utah 496; *Asper v. Moon,* 24 Utah 247, 248.)

"If one of them (the steps leading up to the sale) fails it as fatal as if all failed." (Cooley on Taxation, p. 470; *Eastman v. Gurrey,* 15 Utah 417, 418; *Oleson v. Bagley,* 10 Utah 495.)

The tax title being fatally defective, she could not take advantage of the running of the statute. (*Redfield v. Parks,* 132 U. S. 249, 252, and cases. *Alexander v. Gordon,* 101 Fed., 97; *Danills v. Case,* 45 Fed. 846; *Coulter v. Stafford,* 56 Fed. 569; *Salmer v. Lathrop* [S. Dak.], 72 N. W. 574; *Waterson v. Devoe,* 18 Kan. 223; *Mason v. Crowder,* 85 Mo. 526; *Sheehy v. Hinds* [Minn.], 6 N. W. 781; *Cutler v. Hurlbut,* 29 Wis. 152.) The clause in the note was not self-operative, but was for the benefit of the creditor (plaintiff) and intended to give him an option, and did not render the principal sum due in advance of the time specified on the face of the note, because of the default in payment of interest, so as to start the statute of limitations to running, unless the holder (plaintiff) elected to treat it as due in consequence of the default, which he did not do until he brought this suit. (*Bank v. Reid,* 123 Fed. 221, and cases; *Cox v. Kelle* [N. J. Eq.], 24 At. 1032; *Mason v. Luce* [Cal.], 48 Pac. 72; *Lowenstein v. Phelan* [Neb.], 22 N. W. 561; *Bank v. Parker* [Wash.], 68 Pac. 756, 757; *Watts v. Creighton* [Iowa], 52 N. W. 12; *Harrington v. Claflin* [Texas], 66 S. W. 900.)

## RESPONDENT'S POINTS.

When there is a plain agreement as in this case, "then the whole amount of this note to become due and payable" then it does in fact become due and the statute begins to run. As sustaining respondent's theory, we cite the following: *Real Estate & Building Co. v. Stewart,* 61 S. W. 386; *Machine Works v. Riger,* 64 Tex. 89; *Medley v. Elliott,* 62 Ill. 532; *Walling v. Wheeler,* 30 Tex. 480; *Boman v. Rutter,* 47 S. W. 52; *Dodge v. Signor,* 18 Tex. Civ. App. 45; *Wheeler Mfg. Co. v. Howard,* 28 Fed. 741; *Gregory v. Marks,* 8 Biss. [U.

S.] 44; *Sturges Nat. Bank v. Peck,* 8 Kan. 660; *Brownlee v. Arnold,* 68 Mo. 649; *Noell v. Ganeis,* 68 Mo. 649.

"A judgment creditor may plead the statute against a prior mortgage." (*Duvoe v. Runkle* [Wash.], 74 Pac. 836.) "A subsequent lienor may plead the statute against a prior lienor." (2 Current Law, 760, sec. 7.)

The statute runs against a prior lienholder in favor of a subsequent lienholder. (4 Current Law, 464; *Frates v. Seers,* 144 Cal. 246, 77 Pac. 905.) The right is available to one who stands in the place of the party in whose favor it runs. (4 Current Law, 464.) The grantee assuming a mortgage debt may plead the statute as to it. (*Smith v. Davis,* 90 Mo. App. 533.)

"When a collector states in a deed that he sold sufficient of the land to pay the taxes and charges the presumption is that he did his duty and sold no more than was necessary." (*Ives v. Lyon,* 7 Conn. 504; *Tweed v. Metcalf,* 4 Mich. 579-601; *Biscoe v. Coulter,* 18 Ark. 423; 1 Blackwell, Tax Titles [5 Ed.], sec. 542.)

It is expressly held that the absence of the mortgagor from the state did not stop the running of the statute of limitations against the subsequent lienholders by attachment. (*Watt v. Wright,* 66 Cal. 202; *Lowe v. Allen,* 26 Cal. 143; *Belloe v. Davis,* 38 Cal. 242.)

A sheriff's neglect to sell only such subdivision as might have been necessary to satisfy the judgment of sale for taxes was held not available in a collateral action against the purchaser. (*Flynn v. Edwards,* 36 Fed. 873; Cooley on Taxation [3 Ed.], 953, N. 2.)

STRAUP, J.

1. The appellant, plaintiff below, brought this action on the 29th day of April, 1904, to foreclose a real estate mortgage dated March 1, 1892, and executed and delivered by the defendants Flora I. and Henry F. Seifried to the North American Savings, Loan & Building Company. The mortgage was given to secure the payment of a promissory note of even date in the sum of $400, and payable "in three years

from date and before nine years from date, and at the time when stock No. 4129 of the North American Savings, Loan & Building Company of St. Paul shall mature, and each and every share of said stock be of the value of $100." There was a provision in the note that "after failure of three months to pay any installment of interest or monthly payments due on the stock, the whole note shall become due and payable." In the mortgage it was provided that, in default of such payments, the principal sum "shall, at the election" of the mortgagee, become due and payable. It was further provided by the mortgage that it was given "to secure a loan made on eight shares of stock in said North American Savings, Loan & Building Company, the monthly payments on which amounted to $4.80," which the Seifrieds promised to pay until the stock became fully paid. It was further provided that if the Seifrieds should pay the sum of $400 and interest as evidenced by the promissory note, or should pay the installments of interest due on the note and all fines and monthly payments due on the stock until it became fully paid and of the value of $100 per share, and should then surrender the stock to the company in payment of the note, then the mortgage was to be void, otherwise to remain in force.

In an action by the state of Minnesota on relation of the Attorney-General of that state, the plaintiff, on January 8, 1898, was appointed receiver of the North American Savings, Loan & Building Company, and an adjudication had that it then was, and for a long time prior thereto had been, insolvent; that it had ceased to do business, and was no longer a going concern, and was unable to carry out the purposes for which it was organized; and it was thereupon prohibited from doing business. Thereafter the plaintiff was appointed receiver of the company in and for the district of Utah. The sum alleged to be due on the note was $296.35, with interest due and payable since January 13, 1898. It was alleged that the defendants N. H. and S. L. Ives and Mary B. Crossley claimed an interest in the real estate, and they therefore were made parties defendant. The Seifrieds defaulted, the Iveses filed a disclaimer, and Crossley answered, pleading the stat-

ute of limitations, and asserting title to the real estate by vir-
tue of a tax deed. On the trial, after plaintiff had introduced
the note and mortgage and rested, the defendants Crossley,
over plaintiff's objection, introduced in evidence the tax deed
executed and delivered to her on the 16th day of May, 1902,
by the county clerk and ex-officio county auditor of Weber
county, conveying to her the real estate in question, a lot sit-
uate in Ogden city, which theretofore, and on the 28th day of
December, 1897, had been sold to pay the sum of $12.57, gen-
eral taxes and costs assessed and levied against the property
for the year 1897, and assessed to Flora I. Seifried, in whose
name the title to the property then stood.

The deed, among other things, recited the assessment and
levy of taxes by the proper officers ; that the treasurer furnish-
ed each taxpayer, whose residence or place of business or post-
office address was known, a notice of the amount of the tax as-
sessed against him, when and where payable, and that such
tax would become delinquent on the 15th day of November
next thereafter; that the tax remained unpaid, and became
delinquent; that the treasurer thereafter published in
a newspaper printed and published in Weber county,
state of Utah, and having a general circulation in that
county, for the period required by law, a list of delin-
quent taxes showing the amount of taxes assessed against the
land in question, and the party assessed therewith, for the fis-
cal year ending December 31, 1897. The deed further recited
that the property assessed, levied upon, and advertised (fully
described) was, by the treasurer, on or after the third Monday
in December, 1897, to wit, on the 28th day of December,
1897, offered for sale to pay the taxes, with the costs and
charges thereon, at public auction in front of the county
courthouse in said county, and that M. H. Ives bid the
amount of the taxes, and costs, assessed against the property,
amounting to $12.57, and that the land was thereupon sold to
him, and a certificate of sale issued, which was thereafter as-
signed by him to the defendant Crossley; and that the real es-
tate was sold subject to redemption, and that no redemption
had been made. The deed was executed by the proper officer,

and properly acknowledged. In appellant's printed abstract, where a copy of the deed appears, the face of the deed shows that the property was assessed to Flora I. Seifried; in the transcript, where a typewritten copy of the deed appears, it shows Flora J. Sigfried; and in other portions of the transcript, where the deed is referred to, it shows Flora I. Siegfried. The defense also put in evidence the certificate of sale showing that the property was assessed to Flora I. Seifried. The certificate appears to be regular on its face, and in compliance with the statute. There was also admitted in evidence the delinquent tax list as published, showing the property assessed to Flora I. Sigfried. Evidence was also given that the property was assessed to Flora I. Seifried, and that the tax notice was mailed to her. It was further shown that the defendant Crossley paid the taxes on the property for the years 1898 to 1904, both inclusive, amounting to something like $84. It was also shown that she was in the actual possession of the property. Upon findings made by the trial court, plaintiff's action was held barred by the statute of limitations. It was also held that the tax deed was valid, and that the defendant's title thereunder was superior to plaintiff's mortgage lien. To reverse this judgment, the plaintiff has prosecuted this appeal.

2. It is claimed (1) that the court erred in holding the action barred; (2) in admitting in evidence the tax deed; (3) in admitting in evidence the publication of the delinquent tax list; and (4) in holding the tax title good. Holding, as we do, that plaintiff's action is barred by the statute of limitations, it is unnecessary to pass on the questions relating to the alleged irregularities of the tax proceedings, or as to whether the tax deed was sufficient to operate as a conveyance of title, and, therefore, such questions are not decided by us.

Section 2855, Revised Statutes 1898, provides that civil actions can be commenced only within the periods prescribed after the cause of action shall have accrued. Section 2875 provides that an action upon any contract, obligation, or lia-

bility founded upon an instrument of writing shall be brought within six years. Section 3498 provides that there can be but one action on any debt or for the enforcement of any right secured by mortgage upon real estate, which action must be in accordance with the provision for foreclosure of mortgages. The claims made by appellant are (1) that the defendant Crossley is not in position to invoke the aid of the statute; (2) that the tax title, being fatally defective, she cannot take advantage of the running of the statute; (3) that the cause of action did not accrue until the principal sum was due as specified on the face of the note, or until the mortgagee elected to declare the principal sum due because of the default in the monthly or interest payments, which election was not made until the suit was commenced. The first and second propositions may be discussed together under the question: Who may invoke the aid of the statute? The position taken by appellant, that to entitle one to invoke such aid he must be a party to the written contract, is not tenable. Nor, confining the inquiry to the case before us, is it essential that the defendant Crossley should show a perfect title under her tax deed. To so assert, is, in effect, to say that the statute can be interposed only by one who has otherwise a complete defense to the action. In case of foreclosure of mortgage, the statute may be invoked by any person who has an interest in and to the real estate sought to be foreclosed. The argument is made that the right to interpose the statute is a personal privilege of the Seifrieds, the mortgagors, which could have been waived and was waived by them by their failure to plead the statute; and, further, that they could not successfully have interposed the statute, because of their absence from the state, which caused a suspension of the running of the statute; and that, therefore, the defendant Crossley could not invoke the aid of the statute. This argument has often been made before the courts, and has been answered adversely to appellant's contention. In speaking of the question, in a case where a judgment lienor was invoking the aid of the statute against a prior mortgage, the Supreme Court of California said:

"But it is the settled doctrine of this court, as will be seen from the authorities above cited, that when third persons have subsequently acquired interests in the mortgaged property they may invoke the aid of the statute as against the mortgagee, even though the mortgagor, as between himself and the mortgagee, may have waived this protection; and we see no difference in principle between a suspension of the running of the statute, resulting from an express waiver, and one caused by his voluntary act in absenting himself from the state." Upon a review of the cases, the court further observed: "The theory of all the cases above cited is, that while the general rule is that the plea of the statute of limitations is a personal privilege, the rule does not extend to subsequent property rights over which he has no control." (*Branstein v. Johnson*, 140 Cal. 29, 73 Pac. 744.)

Also, in a case where a judgment lienholder interposed the plea of the statute of limitations against a prior mortgage, it was held by the Supreme Court of Washington that statute could be invoked by him. (*De Voe v. Rundle*, 33 Wash. 604, 74 Pac. 836.) So, too, it has been held that one, who, by either private or judicial sale, has become the owner of an interest in real estate belonging to one or more heirs at law of the mortgagor, may plead the statute of limitations in bar of an action to foreclose a mortgage on the real estate so acquired, although each and all of such heirs at law are parties to the action, and neglected or refused to interpose the plea. (*Hopkins v. Clyde*, 71 Ohio St. 141, 72 N. E. 846, 104 Am. St. Rep. 737.) The following cases also support the doctrine that one who has acquired a lien or interest in and to property sought to be foreclosed by a prior mortgage may invoke the aid of the statute as against the mortgage, notwithstanding the mortgagor neglects or refuses to plead the statute, or that by reason of his acknowledgment, or of his absence, the running of the statute as to him may have been suspended. (*Hill v. Hilliard*, 103 N. C. 34, 9 S. E. 639; *Schmucker v. Sibert*, 18 Kan. 110, 26 Am. Rep. 765; *Coster v. Brown*, 23 Cal. 142; *Frates v. Sears*, 144 Cal. 246, 77 Pac. 905; *Watt v. Wright*, 66 Cal. 202, 5 Pac. 91; *Corbey v. Rogers*, 152 Ind. 169, 52 N. E. 748.) Though it may be assumed that the tax deed, because of its claimed imperfections, and because of the alleged irregularities of the tax proceedings, was inoperative to convey a good title, nevertheless, the deed purporting to

convey title and being consistent with good faith to claim title under it, the defendant Crossley's possession of the property and the equitable lien thereon acquired by her under the circumstances by the payment of the taxes by her, gave her such an interest in and to the real estate sought to be foreclosed by plaintiff as to entitle her to invoke the aid of the statute.

3.    This brings us to the question as to whether the action was barred by the statute. It may be assumed that the action, on the face of the note, is not barred. It may further be assumed, without deciding the point that the provisions in the note and mortgage giving the right to declare the principal sum due on default of interest or monthly payments were only for the benefit of the creditor. But the rule seems to be well settled that the insolvency of a building and loan association and the appointment of a receiver to wind up its affairs works a practical dissolution of the association and terminates, to a certain extent, its contracts with its members. Under such circumstances, the mortgage indebtedness of its borrowing members becomes immediately due and collectible by the receiver, regardless of the fact that it is in terms, payable in installments extending over a definite period of time. The authorities generally hold that, in such case, the borrowing member is to be charged with the amount of money actually received by him, together with legal interest. They differ only as to the amount or kind of credits which are to be allowed him, some holding that he is entitled to credit for all money paid by him to the society, others holding that he is entitled to all interest and partial payments, but not to mere premium or stock payments. These principles are well illustrated by the following authorities:  *Curtis v. Granite State Prov. Ass'n,* 69 Conn. 6, 36 Atl. 1023, 61 Am. St. Rep. 17; *Johnston v. Grosvenor,* 105 Tenn. 353, 59 S. W. 1028; *Weir v. Granite State Prov. Ass'n,* 56 N. J. Eq. 234, 38 Atl. 643; *Strauss v. Building Loan Ass'n,* 117 N. C. 308, 23 S. E. 450, 30 L. R. A. 693, 53 Am. St. Rep. 585; *Strohen v. Franklin Svgs. Fund & Loan Ass'n,* 115 Pa. 273, 8 Atl. 843; *Windsor & Appelgrath v. Bandel,* 40 Md. 172; Thompson, Bldg. & L. Ass'n, section 319; Thornton and Blackledge on Bldg. & L.

Ass'n, 446; Endlich on Bld. & L. Ass'n, 518-531. The rule, so far as here applicable, is well stated in 5 Am. & Eng. Decisions in Equity, page 278, note 20, in the following language:

"The insolvency of a building association, which is that condition of its affairs in which is unable to pay back to its members the amounts paid in by them, respectively, dollar for dollar, puts an end at once to its operations, and as it thus prevents the stock from maturing and extinguishing the loans, according to the contracts between the association and its borrowing members, constitutes a breach of those contracts, and, on the one hand, excuses the borrowers from all further liability for the payment of dues and fines, and on the other hand, renders the mortgages given to secure the loans due and enforceable at once, without regard to their terms, even though payable in installments, and the receiver can proceed to collect them."

The question whether the mortgagors were entitled to credits for all moneys paid to the society by them, or only for interest and partial payments, is not here involved. When the association was declared insolvent and a receiver appointed to wind up its affairs, the mortgage became immediately due and collectible, and the receiver could then have maintained an action for a recovery. The cause of action accrued at that time, and the statute then began to run. The association was adjudged insolvent and a receiver appointed January 8, 1898. The action was commenced April 29, 1904, a period of time longer than six years.

Our conclusion is that the action was barred, and the judgment of the court below is, therefore, affirmed, with costs.

McCARTY, C. J., and FRICK, J., concur.