John Turnis, Appellee, v. Hosea Ballou et al., Appellants.

MORTGAGES: Construction and Operation—Dragnet Clause for Se-
1　curity—Effect. A mortgage which provides that it "*shall stand as security for any other indebtedness the mortgagee may hold or acquire against the mortgagor,*" secures not only (1) the debt which is specifically described and secured by the mortgage, but also (2) a pre-existing, unsecured debt then owed by the mortgagor to the mortgagee, even though, *without the knowledge of the mortgagor* when he executed the mortgage, the debt specifically described and secured by the mortgage did not belong to the mortgagee, but belonged to a third party. It follows that an assignment by the mortgagee to said third party of the mortgage and the specifically described notes, and an assignment of the notes representing the pre-existing debt, arm the assignee with right to foreclose the mortgage for all the debts secured thereby.

PARTIES: Real Party in Interest—Agent for Undisclosed Principal
2　or Beneficiary. Principle reaffirmed that a mortgagee may enforce the mortgage in his own name, even though the mortgage is for the benefit of a third party. (See Book of Anno., Vol. 1, Sec. 10967, Anno. 1 *et seq.*)

**REFORMATION OF INSTRUMENTS:** Instruments Reformable—Dis-
3  crepancy Between Mortgage and Application for Loan. A mortgage
to secure a loan will not be reformed by striking therefrom a mate-
rial clause on the ground that such clause was not embraced in the
*application* for the loan, when the application was a naked *proposal*
for the loan—did not assume to be a contract in itself, and did not
provide for the various terms and conditions of the mortgage in
case the application was accepted.

**REFORMATION OF INSTRUMENTS:** Instruments Reformable—Neg-
4  ligence in Signing. The maker of an instrument may not have it
reformed by striking material matters therefrom, when he had un-
limited and unimpeded opportunity before signing to learn just
what was in the instrument, but negligently failed to inform him-
self.

Headnote 1:  27 Cyc. p. 1568.  Headnote 2:  27 Cyc. p. 1568.  Head-
note 3:  34 Cyc. p. 941 (Anno.)  Headnote 4:  34 Cyc. p. 949.

*Appeal from Jones District Court.*—F. L. ANDERSON, Judge.

NOVEMBER 17, 1925.

REHEARING DENIED FEBRUARY 19, 1926.

SUIT to foreclose two mortgages given by defendants Hosea
Ballou and wife, Maria, to the Jones County Trust & Savings
Bank, covering different properties. Cross-petition for reforma-
tion. Decree for plaintiff. Defendants appeal.—*Affirmed.*

*Park Chamberlain* and *Johnson, Donnelly & Lynch,* for
appellants.

*J. J. Locher, A. M. Cloud,* and *Trewin, Simmons & Trewin,*
for appellee.

MORLING, J.—No question is raised over the right of the
plaintiff to foreclose for the loans of $20,000 and $16,000 re-
spectively, made at the time the mortgages were given.  The
question is whether the following printed stipulation found in
each mortgage should be eliminated, namely:

"It is expressly agreed that this mortgage shall stand as
security for any other indebtedness the mortgagee may hold or
acquire against the said mortgagor. * * *"

The mortgagee named in the mortgage is the Jones County

Trust & Savings Bank. At the time the mortgages were given, the bank held $15,000 of the notes of F. A. Ballou, on which Hosea was indorser (or surety), which he and Maria Ballou have since renewed as principals. These renewal notes now amount to $18,000, and the notes representing the new loans of $20,000 and $16,000, with the mortgages, have been assigned to the plaintiff. The defendants contest the right to a foreclosure for the $18,000, giving as reasons, in substance: (1) That, in making the loans, the Jones County Trust & Savings Bank acted as agent or trustee for the plaintiff, Turnis; that Turnis was the undisclosed principal in the contract for the loans; and that, as Turnis was the real mortgagee, the additional indebtedness clause in question, read in the light of that fact, cannot be construed to secure the $18,000 indebtedness to the Jones County Trust & Savings Bank; (2) that the mortgagors signed the instruments to carry into effect a previous agreement, which did not provide that they should secure the additional indebtedness, and that they signed without knowledge of the inclusion of this clause, and are entitled to reformation by excising it; (3) that, if the $18,000 additional indebtedness is excluded, the security is of adequate value, and no receiver should have been appointed.

1. MORTGAGES: construction and operation: drag-net clause for security: effect.

I. The negotiations resulting in the mortgages were entirely between the cashier of the Jones County Trust & Savings Bank, Stimson, and the Ballous. There is nothing to indicate that the plaintiff, Turnis, was known by the mortgagors to have been personally concerned in the making of the loan until Stimson and Turnis gave their evidence on the trial of this case. Their evidence shows that the plaintiff, Turnis, was a director of the Jones County Trust & Savings Bank; that the $18,000 liability of Hosea and Frank Ballou was objected to by the banking department; that Turnis had money with which he could make the new loans desired by Ballou, and Turnis agreed to furnish the money for the new loans if the mortgages were made to cover the $18,000 old debt to the bank. Plaintiff, Turnis, testifies that he constituted Stimson his agent to represent him in connection with the completion and making of the loans. The money used in making the new loans was Turnis's money.

Turnis owned the two new notes from the beginning, but did not own the old ones, except as the renewals were afterwards assigned to him for the purpose of this suit.

Prior to April, 1919, Hosea Ballou had had no business with the Jones County Trust & Savings Bank. Frank had been doing business with the bank, and was indebted to it. About that time, Hosea put his name on Frank's notes to the then amount of $15,000 (now $18,000). Afterward, Hosea wanted to procure a farm loan. Hosea says that the first thing that occurred about the making of the new loans was that Frank spoke to Cashier Stimson "about whether I could not make it there at the bank. Frank reported this to me, and that is what took us over there." They had an interview at that time, in which, Stimson says, he told Ballou that they would take the mortgage as protection for what Ballou already owed them and for the proposed $36,000, and Ballou assented to it. Hosea and Frank, who was also present, deny that anything was said on the subject. It is not claimed that any contract for the making of the loan was concluded at that interview. The negotiations from that time on were conducted entirely by correspondence. The letters to Ballou so far as appears, were on the letterheads of the Jones County Trust & Savings Bank, and were signed "F. E. Stimson, Cashier." One inquires, "Do you still wish us to make this loan at six per cent?" Another states:

"We are planning to furnish you the money you will need March first and will make it $36,000 if you wish. I am enclosing an application blank, which I wish you would fill in and sign."

Ballou called in Attorney S. S. Crittenden to fill out the blanks in the application. The application reads:

"I hereby apply to the Jones County Trust & Savings Bank for a loan of $36,000 for the term of five years with interest at six per cent, payable semiannually, to be secured by a first mortgage upon property described.

The rest of the application is taken up with the ordinary information requir relating to the worth the security and of the applicant. application contai ipulations as to the terms or contents of the mortgages or not iven. Ballou mailed back the application to S imson, eared

the notes and mortgages in suit, making the notes payable to the Jones County Trust & Savings Bank, and naming the bank as mortgagee, and stipulating for maintaining security, keeping up insurance and taxes, acceleration in case of default, etc. Stimson says that the notes and mortgages were "mailed to his attorney at Clarence, Mr. Crittenden. It must have been done by direction of Mr. Ballou, or I would not have sent them to him." Ballou says he received them through the mail. They are acknowledged before Stephen Crittenden.

It is obvious that no contract was consummated until the notes and mortgages were executed and accepted. The only mortgagee that Ballou knew was the bank. By the terms of the mortgages, they were to stand as security for any other indebtedness that the bank might hold or acquire against the mortgagor. Ballou did not understand that Turnis was the mortgagee, or that he was assuming any obligations to Turnis or giving Turnis security for any indebtedness, existing or future. The agreement was, on its face, and mutually understood as, an agreement with the bank and for the benefit of the bank. The claim in controversy was then owned by the bank. The new loans were, by arrangement between the bank and plaintiff, unknown to Ballou, the property of Turnis, and Turnis, to that extent, was the owner of the security. The bank was the owner of the mortgage, so far as it secured the old indebtedness. Whether the plaintiff's relation to the contract was that of an undisclosed principal, or whether it was that of an equitable owner or beneficiary of a trust, the bank took the mortgages with a right to enforce them and to collect and distribute the proceeds.

2. PARTIES: real party in interest: agent for undisclosed principal or beneficiary.

*Brown v. Sharkey*, 93 Iowa 157; *Linnemann v. Kirchner*, 189 Iowa 336; *Noe v. Christie*, 51 N. Y. 270; *National Bank v. Grand Lodge*, 98 U. S. 123; *Jackson & Sons v. Mott*, 75 Iowa 263; *Fear v. Jones*, 6 Iowa 169; *Simon v. Trummer*, 87 Ore. 153 (110 Pac. 786); *United States Tel. Co. v. Gildersleve*, 29 Md. 232 (96 Am. Dec. 519); *Duott v. Osler*, 44 R. I. 141 (118 Atl. 871); *White & Co. v. Jordan*, 124 Va. 465 (98 S. E. 24); *Namquit Worsted Co. v. Whitman*, 136 C. C. A. 575 (221 Fed. 49).

This suit might have been brought in the name of the bank, and the decree would have covered the interests of the

bank and of the plaintiff. *Namquit Worsted Co. v. Whitman*, 136 C. C. A. 575 (221 Fed. 49); *Kelly Asphalt Block Co. v. Barber Asphalt Pav. Co.*, 211 N. Y. 68 (105 N. E. 88).

The plaintiff is suing here as assignee of the bank. He possesses the entire cause of action.

II. It is claimed that the clause in controversy was not stipulated for in the application for the loan; that the later loan papers were prepared merely for the purpose of carrying out a previous completed agreement; and that the mortgagors signed them in ignorance of the fact that they contained the clause in question, and therefore it is no part of the actual contract, and not binding upon the defendants.

3. REFORMATION OF INSTRUMENTS: instruments reformable: discrepancy between mortgage and application for loan.

It is obvious that *Merriam v. Leeper*, 192 Iowa 587, cited by appellants, does not sustain their contention. The application does not profess to set out the terms of the mortgages to be given, nor does it refer to the notes. It does not profess to be a contract. The notes and mortgages afterwards prepared necessarily contained numerous provisions that are not in the application. The application was neither delivered nor accepted as a contract. On its face it was no more than a proposal. The answer to the application was the notes and mortgages. No legal reason for signing the notes and mortgages without acquiring full acquaintance with their contents is given.

It is well settled that the defendants' failure to inform themselves of the contents of the instruments, under the circumstances shown here, does not entitle them to a reformation, and that they are bound by the papers as written. *First Nat. Bank v. Ten Napel*, 198 Iowa 816; *Houchin v. Auracher*, 194 Iowa 606; *Martin v. Toll*, 196 Iowa 388; *Bowman v. Besley*, 122 Iowa 42, and cases cited.

4. REFORMATION OF INSTRUMENTS: instruments reformable: negligence in signing.

Defendant testifies that he did not read any of the fine print on the second page of the mortgages, did not know that either of them contained the clause in question, did not intend to mortgage his farms for any other indebtedness than the new loans; that nothing had ever been said to him by anyone on the subject of securing any other indebtedness. He does not claim any misrepresentations or give any reason for not reading

the second page of the mortgage. The first page is in pica type, and contains the ordinary defeasance clause. The second page is in bourgeois type, and contains all the ordinary provisions with respect to diminishing the security, insurance, taxes, acceleration clause, attorneys' fees, cost of abstract of title, receivership, etc.

The contested paragraph is the first one on the second page, and in full reads as follows:

"It is expressly agreed that this mortgage shall stand as security for any other indebtedness the mortgagee may hold or acquire against the said mortgagor, mortgagors or either or any of them; and also for any future advances made to said mortgagor, mortgagors, or either or any of them."

The defendant received the mortgages through the mails and returned them through the mails. In a sense, the contested paragraph, assuming defendant's evidence to be true, was not relevant to the loan that he asked for, and that he supposed was granted. He knew, however, that he was owing the mortgagee at that time. He might desire future advances. He cannot claim, and does not claim, that this paragraph was surreptitiously inserted or concealed, for no one representing the mortgagee was present when it was placed before him and when he signed it. No representation was made as to what it did or did not contain. He was indifferent as to what was contained in the so-called small print or bourgeois type of four paragraphs. Printed forms of contracts, leases, insurance policies, mortgages, notes, collateral agreements, and bills of lading, contain many provisions that the party executing them would not think about if he did not read them. Similar clauses in agreements creating security are not unknown. The plaintiff says he told "Stimson on them conditions I would try to get the money, but I wouldn't otherwise—if it would also cover the $18,000." They do not testify that they would not have made the loan if defendant had refused to permit the incorporation of the contested stipulation.

The execution or acceptance of contracts containing unnecessary printed stipulations is not unusual. To grant the reformation of this contract might work a fraud on the bank.

The bank doubtless relied upon the mortgage. The defendant received the plaintiff's money, and has not repaid it. That the defendant actually owes the $18,000,—though, as between him and his son, the son ought to pay it,—is undisputed. As a precedent, such reformation would be a dangerous one, and the breeder of unlimited litigation. The rationale of the rule estopping a party to a contract from saying that he did not read it, where no fraud, artifice, or ruse is practiced, is well stated by Judge Sanborn in an opinion concurred in by Justice Brewer and Judge Thayer in *Chicago, St. P., M. & O. R. Co. v. Belliwith,* 28 C. C. A. 358 (83 Fed. 437, 439), as follows:

"A written contract is the highest evidence of the terms of an agreement between the parties to it, and it is the duty of every contracting party to learn and know its contents before he signs and delivers it. He owes this duty to the other party to the contract, because the latter may, and probably will, pay his money and shape his action in reliance upon the agreement. He owes it to the public, which, as a matter of public policy, treats the written contract as a conclusive answer to the question, what was the agreement? If one can read his contract, his failure to do so is such gross negligence that it will estop him from denying it unless he has been dissuaded from reading it by some trick or artifice practiced by the opposite party. * * * This is a just and salutary rule, because the other contracting party universally acts and changes his position on the faith of the contract; and it would be a gross fraud upon him to permit one who has received the benefits of the agreement in silence to escape from its burdens by proof that he did not know and did not inquire what these burdens were, when he assumed them. * * * A written instrument cannot be avoided for fraud or mistake unless the evidence of the fraud or mistake is clear, unequivocal, and convincing."

Cases may arise in which parties may have been surprised into signing agreements which contain provisions foreign to the subject-matter of their negotiations, and in which, on evidence of the employment of artifice or urgency in signing, or of an untrue implied representation, reformation might be required. We are basing this decision upon the particular facts

of the case, and on those facts we think that a case for reformation has not been made.

III. The right to a receiver if the mortgage secures the $18,000 indebtedness is not contested.

The decree is—*Affirmed.*

FAVILLE, C. J., and EVANS and ALBERT, JJ., concur.