COMMERCIAL STATE BANK OF INDEPENDENCE et al., Appellants, v. FRANK B. IRELAND et al., Appellees.

No. 41291.

NOVEMBER 15, 1932.

242

Roy A. Cook, for appellant.

Molloy & Smith, for appellees.

FAVILLE, J.—Appellees are husband and wife. Frank Ireland owned and operated a gift shop in the city of Independence. He individually became indebted to the appellant bank in the sum of $8,000, and was owing said amount on October 31, 1929. The evidence tends to show that at said time the stock of goods in said appellee's shop was worth about $4,000. On said date the appellee Lulu was the owner of the real estate involved in this action, which was occupied by the appellees as a homestead, the title to which had been in the said Lulu for twenty-five years. On said date negotiations were entered into between an officer of the appellant bank and the appellees with regard to a settlement and adjustment of said indebtedness of Frank to said bank. It was finally agreed between said parties that said indebtedness should be settled and compromised on the basis of $2,500, and that said indebtedness should be evidenced by two notes, one for $1,500, executed by Frank alone and secured by a chattel mortgage on the said stock of goods, and the balance of $1,000 to be represented by a note signed by both Frank and Lulu and secured by a real estate mortgage upon said homestead. In accordance with this arrangement the necessary papers were executed and signed as indicated. Frank alone signed the note of $1,500 and executed a chattel mortgage on the stock of goods. Both the appellees signed the note for $1,000 and the mortgage securing the same upon the homestead.

This action was brought to foreclose the said real estate mortgage on the homestead for the amount due, not on the said $1,000 note which is described in said mortgage, but on the $1,500 note which is signed by Frank alone and secured by the chattel mortgage on the stock of goods.

The real estate mortgage in question contains the following provision:

"To be void upon condition that the said mortgagor shall pay or cause to be paid to the said mortgagee the indebtedness evidenced by one promissory note of even date herewith, for the total principal sum of one thousand dollars ($1,000.00) and said notes being executed by mortgagor to mortgagee and bearing interest according to the tenor thereof; and the latest of the same to mature falling due on the 31st day of October, 1934, and which are more particularly described as follows, to wit: One note for $1,000.00 due Oct. 31, 1934, with interest at six per cent semiannually. And upon the further condition that the mortgagor shall fully perform each and all of the covenants and agreements herein set out."

Among the covenants and agreements provided in said real estate mortgage is the following:

"2nd: To pay all other indebtedness that the mortgagee may hold or acquire against the said mortgagor, or either of them and to pay any and all notes and other obligations which the mortgagor, or either of them, may at any time be owing the mortgagee during the existence of this mortgage."

It is upon this latter clause that the appellant predicates right to recover and to foreclose said real estate mortgage for the $1,500 note of appellee Frank which was secured by the chattel mortgage. It will be observed that the note which it is now sought to include in the foreclosure was not executed by Lulu, who was the owner of the real estate covered by the mortgage. The quoted clause, however, provides that the mortgage shall stand as security for all the indebtedness that the mortgagee may hold or acquire against *either* of the parties to the mortgage.

Were there nothing involved in this case except the mere legal construction of the instruments as written, the appellant would be entitled to the relief demanded. Turnis v. Ballou, 201 Iowa 468; Corn Belt Savings Bank v. Kriz, 207 Iowa 11. See also Sullivan v. Murphy, 212 Iowa 159. In this case, however, the appellees sought reformation of the real estate mortgage by striking said clause therefrom. In its last analysis the case resolves itself into the question as to whether or not such reformation should be granted.

The evidence clearly and satisfactorily establishes that it was not the intention of the appellees or either of them that the real estate mortgage should stand as security for the indebtedness of Frank in excess of the $1,000 note specifically named and described

in said real estate mortgage. The indebtedness was solely that of the appellee Frank. The bank sought security for such indebtedness. The matter was canvassed thoroughly between the parties. We are satisfied from the record that the appellee Lulu refused to be bound for any portion of said indebtedness in excess of the $1,000 specifically described in the real estate mortgage and refused to pledge her homestead to secure any of the indebtedness of the appellee Frank in excess of said $1,000. It was because of this situation apparently that the compromise indebtedness of Frank was divided into two notes which were executed simultaneously. The one note of $1,500 was signed by appellee Frank alone, and was secured by a chattel mortgage on the stock of goods, which mortgage was also signed by him alone. The note of $1,000 was signed by both Frank and Lulu, as was the real estate mortgage executed by both of said parties to secure the same. The rate of interest was different in the two notes. The evidence in behalf of the appellees shows that the representative of the bank stated to the appellees that the $1,000 was separate from the other indebtedness and that Lulu would be released from all liability when the $1,000 was paid. In behalf of the appellant the evidence shows that neither of the appellees read the mortgage in full at the time it was executed. The appellee Lulu testified that she did not have a chance to read the mortgage, and explained this by saying that her husband started to read the papers and was told by the attorney acting for the bank at the time that the mortgage was "in the usual form of real estate mortgage" and that he took the same out of the hands of Frank. On cross-examination she testified that she did not read the mortgage, but supposes that she could have read it, and that no one prevented her so doing. Frank, as a witness, testified to the effect that whether or not he has difficulty in reading depends upon the glasses he has and how fine the print is; that he started to read the mortgage in question, and when he got down to the description of the premises the attorney said that it was the regular and ordinary form of mortgage, that they are bought by the number, and reached for the mortgage and took it from Frank; and that is all he ever read of it.

The appellant relies upon the proposition that by the terms of the mortgage the indebtedness represented by the $1,500 chattel mortgage note was covered by it, and that the failure of the mortgagors to read the provisions of the mortgage in regard to securing

other indebtedness forecloses their right to reformation of the instrument without a specific showing of fraud or deception preventing them from reading the mortgage.

We have had occasion to construe a mortgage of this character and·the rights of the parties thereunder in the cases above cited, and more especially in the recent case of Sullivan v. Murphy, supra, wherein the question was fully discussed pro and con. We are of the opinion, however, that the facts of the instant case present a different situation than was involved in any of the cited cases. In the case at bar, the indebtedness now sought to be included in the real estate mortgage was fully discussed and considered by the parties, and the appellee Lulu refused to mortgage her homestead to secure any greater amount of the indebtedness of her husband to the appellant by mortgage upon her homestead than the $1,000. She refused to be bound in any way for the $1,500 which was secured by the chattel mortgage. This was understood·by all parties to the transaction, and we are satisfied from the record that there was no intention on the part of either the appellant's officers or the appellees at the time of the execution of the instruments that the $1,500 should in any manner or by any means be· secured upon the real estate. The officers of the bank do not contend that such was the intention. It is clearly established that the contrary was the intention of the parties. The rights of third parties have in no way intervened in this matter, and no good reason appears why the instrument should not be reformed to express the true intention and understanding of the parties. The identical indebtedness which it is now sought to incorporate into the real estate mortgage was discussed between the parties, and it was intended that it should not be included in said real estate mortgage. To hold that by the clause referred to it is now incorporated within the terms of said mortgage, notwithstanding the express understanding of the parties to the contrary, would render the power of reformation that is lodged in a court of equity impotent and unavailing. Equity will not countenance that which in effect would amount to a legal fraud.

From a careful examination of the record we are satisfied that the peculiar facts of this case bring it outside of the general rule which binds parties to an instrument duly executed with full opportunity to examine the same and without reading the instrument or becoming familiar with its contents. We are satisfied that neither the representatives of the bank nor the appellees knew at the time

that this clause of the mortgage could be construed to cover the $1,500 note which had been secured by the chattel mortgage, or that either had any purpose or intention that by the terms of said mortgage said note should be secured thereby. In fact, we think from the record that the contrary is abundantly established. We rest our conclusion in this case upon the peculiar facts shown by this record and hold that the court did not err in decreeing reformation of the real estate mortgage and denying foreclosure for said note of $1,500.

The decree of the trial court meets with our approval, and it is in all respects—Affirmed.

STEVENS, C. J., and DE GRAFF, ALBERT, WAGNER, and BLISS, JJ., concur.