B. E. First, Appellee, v. F. C. Byrne, Appellant; M. F. First et al., Defendants.

No. 47019.

JULY 29, 1947.

Locher & ·Locher, of Monticello, and Elderkin & Locher, of Cedar Rapids, for appellant.

Remley & Remley, of Anamosa, for appellee.

SMITH, J.—The mortgage covered premises owned by defendants Byrne and M. F. First as tenants in common. It provided:

"It is further expressly agreed that this mortgage shall stand as security for any other indebtedness, direct or contingent, that the mortgagee may now hold or in the future during the life of this mortgage acquire against the said mortgagors, or either or any of them."

It was given June 13, 1940, specifically to secure mortgagors' joint note of even date for $2,400, and was subject to a first mortgage securing a joint debt of the same parties. Mortgagors were partners in business. Plaintiff mortgagee is defendant M. F. First's father and had on prior occasions loaned the partnership money which had been repaid. Other named defendants need not be identified or referred to.

The petition, filed May 10, 1946, asked personal judgment against both defendants upon their joint $2,400 note; personal judgment against defendant First upon his individual demand

note of $5,667.32, dated May 8, 1946; and personal judgment against defendant Byrne upon his individual note of $1,192, dated July 15, 1940. It prayed that all be decreed a lien against the mortgaged premises and asked foreclosure of the mortgage as to all three amounts.

Defendant Byrne alone appeared and answered. He pleaded that the clause of the mortgage quoted above was intended only to secure the repayment of advances necessary for the protection of the security to the $2,400 loan and such future advances as the parties might agree to. He denied that the M. F. First note of May 8, 1946, was ever agreed to, and alleged that he had no knowledge of its execution or participation in its proceeds; that its execution was the result of a fraudulent scheme to wipe out his remaining interest in the property; that plaintiff's conduct in securing it was unfair and inequitable; and that plaintiff was not entitled to relief in equity.

Judgment and decree were rendered as prayed and defendant Byrne alone appeals. He complains only of that part of the decree making the judgment on defendant M. F. First's separate note of $5,667.32 a lien upon his (appellant's) interest in the mortgaged premises under the "dragnet" provision of the mortgage above quoted.

It appears from the evidence this note of defendant M. F. First to his father, given two days before commencement of suit, represented a debt contracted November 9, 1926. On that date plaintiff paid his son's share of the purchase price of the premises later covered by the mortgage in suit. The indebtedness had never been acknowledged in, or reduced to, writing until the execution of the note May 8, 1946, and no payments had ever been made on it. Defendant Byrne had no knowledge of it when the mortgage was given. Defendant First admitted on cross-examination that he signed the note knowing the foreclosure suit was to be brought and said that was the purpose of signing it. Plaintiff did not deny this.

The original petition did not reveal the origin of the indebtedness represented by this note. It was first pleaded by plaintiff in a "Reply to Answer and Amendment to Petition" filed two months after the answer was filed and three days

before trial. Thereupon defendant Byrne filed "Amendment to Answer" in which he pleaded that action on said indebtedness had long since been barred by the statute of limitations and "that to permit, without the knowledge, consent or acquiescence of the defendant, F. C. Byrne, a revival of the alleged debt * * * and * * * to bring the same under the apparent terms of the *acceleration* [sic] clause of the mortgage * * * is unfair and inequitable and unconscionable and is conduct such as should not entitle plaintiff to relief in a court of equity."

██ This amendment is not included in the printed record but question having arisen on oral argument as to such defense having been pleaded we have caused it to be certified under Rule 341, Iowa Rules of Civil Procedure. We shall, of course, consider it only so far as the printed briefs will justify such consideration.

I. What was the intention of the parties expressed by the above-quoted "dragnet" clause? The question is one of first impression as applied to a situation such as is presented here. No lamp of precedent lights our way.

The mortgagors owned the premises as tenants in common and the mortgage was specifically given to secure their joint note. The "dragnet" clause would, of course, be effective to make it secure other existing and future *joint* indebtedness of the mortgagors to the mortgagee. But its language is broader than that: " * * * shall stand as security for any other indebtedness * * * that the mortgagee may now hold or in the future * * * acquire against the said mortgagors, *or either or any of them.*"

Does this mean the interest of each in the mortgaged premises was intended to be absolutely pledged to secure existing and future debts of the other as well as his own? Or should it be construed to mean each mortgagor pledges his own undivided interest to secure his own individual "other indebtedness" and in addition only such individual debts of the other (existing or future) as he may have knowledge of and consent to have included?

██ A court of equity should be reluctant to adopt the first construction suggested above. "Dragnet" clauses are not

highly regarded in equity. They should be "carefully scrutinized and strictly construed." First Bank & Trust Co. v. Welch, 219 Iowa 318, 321, 258 N. W. 96, 97. In Corn Belt Sav. Bk. v. Kriz, 207 Iowa 11, 18, 219 N. W. 503, 506, it is said:

"The use of such a clause is not to be commended, and it naturally arouses suspicion as to the good faith of the mortgagee in the transaction. It might in many cases not require much evidence of concealment, haste, or artifice to overturn it. Such a clause, on the particular facts, was sustained in Turnis v. Ballou, 201 Iowa 468."

The same justice wrote both the opinion in Corn Belt Sav. Bk. v. Kriz, supra, and in the cited case of Turnis v. Ballou, 201 Iowa 468, 205 N. W. 746. In each the "dragnet" clause was given effect. In the Turnis case the "other indebtedness" was that of the same mortgagor who owned the mortgaged property. In the Kriz case the clause was in a joint mortgage by husband and wife upon premises the husband had conveyed to the wife and the "other indebtedness" was the husband's alone. The wife sought to avoid the foreclosure as to the individual debts owed by the husband and to reform the mortgage upon the ground that she did not know the "dragnet" clause was in it and that her signature was obtained by fraud. The facts were in dispute and her contention was overruled. Neither case involved a question of construction or facts comparable to those confronting us here.

In Commercial State Bk. v. Ireland, 215 Iowa 241, 245 N. W. 224, defendant mortgagors in a foreclosure suit sought and obtained *reformation* of the mortgage, eliminating the "dragnet" clause as not within the intent of the parties to the instrument. It was held that to uphold the clause under the circumstances there shown would amount to a legal fraud. The case is cited by both appellant and appellee but does not seem particularly helpful here except as indicating the readiness of equity to avoid the operation of the "dragnet" clause where to permit it to stand would produce a result not intended by the parties when it was executed.

The case of Sullivan v. Murphy, 212 Iowa 159, 165, 232 N. W. 267, 269, is also cited by both sides. There is in it, strictly speaking, no "majority" opinion. The one written by Chief Justice Morling was concurred in by two justices. Two others joined in a special opinion reaching the same result, while four dissented outright.

The facts are not analogous or comparable to the facts here. The trial court denied plaintiff's claimed right, under a "dragnet" clause, to tack to the mortgage a note representing an indebtedness not owed by the equitable owner of the mortgaged homestead. Five judges affirmed the decision but not all by the same reasoning.

Chief Justice Morling's opinion is based on the broad principle that the proceeding, though not a suit for specific performance, was nevertheless governed by the equitable doctrine applicable to such suits, viz.:

"To stay the arm of a court of equity from enforcing a contract it is by no means necessary to prove that it is invalid; from time to time immemorial it has been the recognized duty of such courts to exercise a discretion; to refuse their aid in the enforcement of unconscionable, oppressive, or iniquitous contracts * * *." Quoting from Pope Mfg. Co. v. Gormully, 144 U. S. 224, 236, 12 S. Ct. 632, 637, 36 L. Ed. 414, 419.

Numerous other authorities are cited and quoted.

The special concurring opinion by Justice Evans reached the same result by construction of the contract in the light of the circumstances and held it did not contemplate or cover the indebtedness sought to be included within the protection of the mortgage. The dissenting opinion, written by Justice Grimm, stood on the literal language of the contract and claimed the majority was overruling Turnis v. Ballou, supra, and Corn Belt Sav. Bk. v. Kriz, supra.

These various Iowa decisions are by no means conclusive of the question involved here, partly because of factual, and partly because of procedural, differences. We have here no direct evidence of the intent of the parties, whether there was

any discussion of this particular part of the mortgage, or even whether either or all of them knew it was in the printed form. We are told by appellee's brief that the clause was in common use in Jones county for many years, referring us to Monticello State Bk. v. Schatz, 222 Iowa 335, 268 N. W. 602, and Turnis v. Ballou, supra. We are left to assume the mortgage form was used without discussion of the particular clause in question and with no special regard having been given to its consequences —certainly with no express common intent or purpose as to the debt in question.

No reason is suggested why this debt was not referred to in the mortgage if it was intended to be included. It would seem good faith required some mention of it. Appellee and his son both knew of it; appellant did not. It represented one half the purchase price of the premises and its inclusion would have made reasonably certain that appellant's interest in the premises would have to help pay it in case of foreclosure and would be thereby entirely wiped out. It had existed nearly fourteen years, resting in parol, and with no payment of principal or interest having been made. Even had appellant known of its existence we cannot reasonably assume it would have occurred to him that he was mortgaging his interest in the premises for its payment if no mention was made of it, or that he would have signed the mortgage knowing it was to be included.

And in all charity we cannot assume the mortgagee and his son had at that time any such secret intention. To so assume would impute to them a degree of duplicity not consistent with the apparently friendly relations of the parties. What has since occurred to account for the present attitude is not shown.

In a joint mortgage given by cotenants each pledges his own individual interest. In a sense, separate liens are created upon the separate interests. If the interest of one is mortgaged to secure the individual debt of the other a relationship of suretyship is created. 36 Am. Jur., Mortgages, section 62; 50 C. J., Principal and Surety, section 35; Christner v. Brown, 16 Iowa 130, 132; Cross v. Allen, 141 U. S. 528, 534, 12 S. Ct. 67, 35 L. Ed. 843.

In. Christner v. Brown, supra, a mortgage was given to secure a debt due the mortgagee, not from the mortgagor but from a third person. This court said: "That the liability of Porter, by reason of his mortgage, was that of a surety, we entertain no doubt." In the article on Principal and Surety in 50 C. J., section 1, it is said: "A suretyship may be designated * * * as 'real' where certain specific property can be taken to enforce payment of another's debt * * *." And in section 35 of the same article it is said:

"A common instance of real suretyship, under which property mortgaged * * * is said to stand as surety, and the surety held liable as such only to the extent of the property mortgaged * * * arises where property is mortgaged, without personal liability, to secure the debt or obligation of another * * *."

To construe the language here as creating such a relationship to secure indebtedness the existence of which was unknown to the surety, and, of course, not intended by him to be secured, would be to countenance a situation inviting abuse and unfair dealing. It would give the indebted comortgagor and cotenant in effect a power of attorney to impose a lien upon the other's interest for his own benefit, to make the other a surety for the payment of his own debt. As a court of equity we cannot so construe it. Such a result should not be presumed or declared except upon a clear showing of intention.

Again referring to the article in 50 C. J. on Principal and Surety, section 111, we find:

"Where the names of two or more parties to an obligation appear, it will be presumed, unless a different relation is shown by the language of the writing, that all are principals; and in the absence of evidence to the contrary there generally is no presumption that any of such parties are sureties * * *."

Of course, the facts in the cases cited in support of the text are not in point here but we think the stated principle of law is applicable. Each mortgagor was a principal as to his own personal obligations. Whether he was to be held as a

surety for the separate debt of the other depended on whether he consented to such relationship.

■ We construe the "dragnet" clause to mean that each mortgagor pledged his undivided interest in the mortgaged premises to secure, in addition to the specifically named joint indebtedness: first, any other existing or future *joint* indebtedness of the mortgagors to the mortgagee; second, any other existing or future *individual* debt of the mortgagor whose interest is sought to be foreclosed upon; and third, any existing or future debt of the other mortgagor which was known to the one whose interest is sought to be held and by him consented to or acquiesced in as being included in the lien upon his interest.

This construction is reasonable and in complete harmony with the language used, the conduct of the parties, and the circumstances as they existed at the time the mortgage was executed.

"The contract of suretyship imports entire good faith and confidence between the parties in regard to the whole transaction. Any concealment of material facts or any express or implied misrepresentation deceiving the surety * * * may invalidate the undertaking." 50 Am. Jur., Suretyship, section 17, section 163 et seq.

See, also, Benton County Sav. Bk. v. Boddicker, 105 Iowa 548, 75 N. W. 632, 45 L. R. A. 321, 67 Am. St. Rep. 310.

It is manifest the views we have announced must result in a reversal and remand of the case for modification of the decree to relieve appellant's share of proceeds of sale of the mortgaged premises from all liability on the individual judgment against his comortgagor. Clearly there was no intention when this mortgage was executed to make it a pledge of appellant's property to secure the old indebtedness sought now to be included; or if there was such intention it was nullified by appellee's conduct in concealing the fact of the existence of his son's indebtedness.

II. Our conclusion is strengthened by consideration of the fact that the debt was long barred by the statute of limitations when the mortgage was given. It is true appellant promptly

pleaded the statute of limitations when the origin and nature of the indebtedness was revealed by appellee's "Reply to Answer and Amendment to Petition."

But the language of appellant's pleading and the method in which he argues, it here do not suggest that the statute was pleaded as a defense which he could interpose. Rather, the fact that the debt was barred seems to be pleaded and argued on the ground that it was fraudulent to revive it in order to enforce it against his property. Appellant seems to concede his comortgagor's power to revive as against him. In this we think he concedes too much.

It is true, of course, as a rule, that the right to interpose the statute as a defense is a personal privilege of the debtor which he may waive, or omit to avail himself of, if so inclined. But if appellant's property had been pledged to the payment of his comortgagor's debt and that debt had become barred we would entertain no doubt of his right to plead the statute in defense of his own property. Day v. Baldwin, 34 Iowa 380. See, also, Graves v. Seifried, 31 Utah 203, 87 P. 674, 676; 37 C. J., Limitation of Actions, sections 27, 33; 34 Am. Jur., Limitation of Actions, section 379.

He could not, of course, plead it on behalf of the principal debtor, nor could the latter waive it for him. In Day v. Baldwin, supra, the principal expressly waived the defense of the statute; the surety pleaded it. It was held the admission by the principal could not prejudice the surety's interests, the opinion saying:

"It is against his property that the action is brought, and that he may plead the statute of limitations in bar of the action in this respect, we have no doubt." 34 Iowa 380, 384.

However, we hold here appellant's interest was never pledged for the payment of the already outlawed debt. Consequently the statute of limitations has no application. But the fact that the debt was so long barred by the statute with no apparent intention of either creditor or debtor to treat it as an existing obligation strongly confirms our conclusion that there

was no purpose of covering it under the "dragnet" clause of the mortgage.

III. The situation is different as to the individual judgment against Byrne. Defendant M. F. First testified he knew of the Byrne loan from his father and he impliedly consents that it be treated as a lien against his interest. He made no defense in the district court and has not appealed to this court.

But his liability therefor is only as surety (see authorities cited in Division I). The concession is of no benefit to appellant Byrne, whose interest in the premises seems sufficient to pay both his part in the joint judgment and the one against himself on his individual note. Nor, under the record, is it likely to result in loss to the surety. There is no probability that any part of the latter's interest will be available for distribution to him in any event.

The decree should be modified so as to marshal the net proceeds of sale after payment of the judgment on the joint $2,400 note, together with taxes, attorney's fees thereon, and costs, making appellant Byrne's share thereof subject only to the personal judgment against him on his individual note of $1,192, and defendant M. F. First's share subject to the judgment on his individual note of $5,667.32, plus the deficiency, if any, remaining unpaid on the individual personal judgment against appellant.

For that purpose the case is reversed and remanded.—Reversed and remanded.

OLIVER, C. J., and BLISS, HALE, GARFIELD, MANTZ, MULRONEY, and HAYS, JJ., concur.