[Civ. No. 23819.   First Dist., Div. Two.   Jan. 17, 1968.]

THOMAS F. GATES et al., Plaintiffs and Appellants, v. CROCKER-ANGLO NATIONAL BANK et al., Defendants and Respondents.

Foley & Foley and James W. Foley for Plaintiffs and Appellants.

Severson, Werson, Berke & Larson and Dennis M. Talbott for Defendants and Respondents.

SHOEMAKER, P. J.—Plaintiffs Thomas and Joanne Gates (hereafter Gates) brought this action against defendants Crocker-Anglo National Bank (now Crocker-Citizens National

Bank), The Anglo Safe Deposit Company and Peter and Patricia Abell (hereafter Abell) to obtain a judicial declartion that plaintiffs were the owners of and entitled to immediate possession of certain funds obtained through the sale of a parcel of real property. The trial court rendered a judgment awarding the funds in question to defendant bank, and plaintiffs have appealed therefrom.

Gates and Abell were tenants in common of a parcel of real property located in San Jose, Santa Clara County, California. On March 27, 1962, they executed to defendant bank a promissory note in the principal amount of $60,000, and a deed of trust of said real property securing the same. The purpose of the loan was to refinance a prior secured indebtedness which was entirely the obligation of Abell. The deed of trust provided that it was given to secure "the payment of all other moneys and indebtedness now and hereafter due or owing from Trustor or any of them to Beneficiary. . . ."

As of March 27, 1962, the date of the execution of the aforementioned note and deed of trust, Abell was indebted to defendant bank on an unsecured personal note in the sum of $20,500. This obligation was, at that time, overdue and in default.

Gates had no knowledge or notice of Abell's pre-existing unsecured debt to defendant bank, and defendant bank had never at any time discussed the transaction or the prior indebtedness of Abell with Gates.

Upon the sale of the real property, the balance due on the note specifically secured by the deed of trust was paid in full to defendant bank. There remained on hand from the proceeds of the sale about $28,000, of which defendant bank claimed to be entitled to receive approximately $25,000 in payment of the unsecured obligation of Abell by reason of the "dragnet" clause in the deed of trust.

The trial court found that plaintiffs had no knowledge of Abell's pre-existing indebtedness to defendant bank until the bank made a demand for payment of said indebtedness out of the proceeds of the sale of the San Jose real property; that plaintiffs never talked to the bank or any of its officials before executing the $60,000 deed of trust. The court concluded as a matter of law that the "dragnet" clause in the deed of trust was a valid contractual provision and that defendant bank had no duty to disclose to plaintiffs the antecedent debt of Abell, since there was no showing that the bank had knowledge of the fact that plaintiffs were unaware of said debt.

Plaintiffs argue that a deed of trust which is executed by tenants in common and which contains a broadly worded "dragnet" clause should not be held to render one cotenant's interest in the jointly owned property liable for a pre-existing, unsecured debt of the other cotenant in the absence of evidence affirmatively establishing that such result was intended by the parties and that the cotenant whose interest is sought to be charged had notice or knowledge of his cotenant's debt.

Plaintiffs rely upon the Iowa case of *First* v. *Byrne* (1947) 238 Iowa 712 [28 N.W.2d 509, 172 A.L.R. 1072], as supporting their contention and we are persuaded that the reasoning of that case applies equally here. In the *First* case, two tenants in common, Byrne and First, executed a joint note and deed of trust in favor of First's father. The mortgage contained a provision to the effect that it should stand as security for "any other indebtedness . . . that the mortgagee may now hold or in the future during the life of this mortgage acquired [*sic*] against the said mortgagors or either or any of them." Subsequent to the execution of the note and mortgage, First gave the mortgagee a note representing an indebtedness which had been incurred some 14 years prior to the execution of the mortgage, which had never been reduced to writing and as to which no amount had ever been paid toward either principal or interest. Byrne had had no knowledge of this prior debt when he executed the mortgage containing the "dragnet" clause. There was no direct evidence as to the parties' intent with regard to the clause and no evidence that they had or had not discussed it or were even aware that it was included in the printed mortgage form.

Although the trial court held that Byrne's interest in the jointly owned property was liable, under the "dragnet" clause, for the note given by First to the mortgagee, this portion of the judgment was reversed on appeal. The court, in so holding, first noted that "dragnet" clauses were not highly regarded in equity, were subject to careful scrutiny and strict construction and could be overturned on a showing of concealment, haste or artifice. The court went on to state: "No reason is suggested why this debt was not referred to in the mortgage if it was intended to be included. It would seem good faith required some mention of it. Plaintiff and his son both knew of it; appellant did not. . . . Even had appellant known of its existence we cannot reasonably assume it would have occurred to him that he was mortgaging his interest in

the premises for its payment if no mention was made of it; or that he would have signed the mortgage knowing it was to be included.

"And in all charity we cannot assume the mortgagee and his son had at that time any such secret intention. To so assume would impute to them a degree of duplicity not consistent with the apparently friendly relations of the parties. . . .

"In a joint mortgage given by cotenants each pledges his own individual interest. In a sense separate liens are created upon the separate interests. If the interest of one is mortgaged to secure the individual debt of the other a relationship of suretyship is credited [*sic*]. . . .

" . . . . . . . . . . . . . . . . . . . . . . . .

"To construe the language here as creating such a relationship to secure indebtedness the existence of which was unknown to the surety, and of course not intended by him to be secured, would be to countenance a situation inviting abuse and unfair dealing. It would give the indebted comortgagor and cotenant in effect a power of attorney to impose a lien upon the other's interest for his own benefit, to make the other a surety for the payment of his own debt. As a court of equity we cannot so construe it. Such a result should not be presumed or declared, except upon a clear showing of intention. . . .

" . . . . . . . . . . . . . . . . . . . . . . . .

"We construe the 'dragnet' clause to mean that each mortgagor pledged his undivided interest in the mortgaged premises to secure, in addition to the specifically named joint indebtedness: First, any other existing or future *joint* indebtedness of the mortgagors to the mortgagee; second, any other existing or future *individual* debt of the mortgagor whose interest is sought to be foreclosed upon; and third any existing or future debt of the other mortgagor which was known to the one whose interest is sought to be held and by him consented to or acquiesced in as being included in the lien upon his interest.

"This construction is reasonable and in complete harmony with the language used, the conduct of the parties and the circumstances as they existed at the time the mortgage was executed." (Pp. 512-513.)

█ Defendant bank attempts to distinguish this case on its facts, but we are satisfied has failed to do so. The crucial factors present in the instant case, as in *First,* are as follows:

there was no direct evidence that the parties intended the "dragnet" clause to apply to Abell's pre-existing, unsecured obligation and likewise no evidence that the parties discussed the clause or knew that it was included in the printed deed of trust form; the deed of trust omitted any reference to Abell's pre-existing obligation in favor of defendant bank; both defendant bank and Abell were aware, at the time the deed of trust was executed, of the latter's prior indebtedness in favor of the former; plaintiffs were totally unaware of said obligation and presumably would not have executed the deed of trust had they known that the "dragnet" clause contained therein would render them liable as sureties for Abell's individual debt.

Defendant bank has directed this court to no California authority which compels a different result than that reached in *First* v. *Byrne, supra.* Although defendant relies upon *Langerman* v. *Puritan Dining Room Co.* (1913) 21 Cal.App. 637 [132 P. 617], defendant concedes that that case upheld the validity of a "dragnet" clause only with respect to future advances made subsequent to the execution of the mortgage. Moreover, there was ample evidence in that case that the parties had expressly understood and agreed, at the time the mortgage was executed, that it was to stand as security for future advances. Finally, that case did not involve a situation where one cotenant, through the operation of the "dragnet" clause, was subjecting his interest in the jointly owned property to liability for the individual debts of the other cotenant.

The judgment is reversed and the cause remanded for further proceedings consistent with the views expressed herein.

Agee, J., and Taylor, J., concurred.