L. G. EVERIST et al., Appellants, v. EX. B. CARTER et al.,
Appellees.

**MORTGAGES: Lien and Priority—Advancements After Judgment.** A
1 mortgage on realty actually given to secure future advances of money
to the mortgagor is prior in right to subsequently rendered judgments
against the mortgagor *as to advances made after the rendition of the
judgments,* it not appearing that the mortgagee had *actual* knowledge
of said judgments.

**MORTGAGES: Absolute Deed as Mortgage—Sale—Failure to Apply**
2 **Proceeds—Effect.** One who holds an absolute deed as a mortgage
and, under agreement with the mortgagor, sells the property, may
not, as against a subsequent judgment lien holder, enforce priority to
the proceeds of the sale, *except to the amount or extent that he applies
the proceeds on his mortgage debt.*

**COSTS: Taxation—Attorney Fees—Motion to Retax.** Error in the taxa-
3 tion of attorney fees may be reached by motion to retax.

Headnote 1: 41 C. J. p. 527. Headnote 2: 34 C. J. p. 595. **Headnote
3:** 15 C. J. p. 185.

Headnote 1: 19 R. C. L. 429.                                    •

*Appeal from Woodbury District Court.*—A. O. WAKEFIELD,
Judge.

OCTOBER 26, 1926.

Action in equity by judgment creditors, to subject property
of the judgment debtor to the payment of the judgments, with a
cross-petition praying for the foreclosure of certain deeds as
mortgages. The facts are stated in the opinion. From a decree
for cross-petitioners, the plaintiffs appeal.—*Modified and af-
firmed.*

*F. H. Schmidt,* for appellants.

*Jepson, Struble, Anderson & Sifford,* for Ex. B. Carter,
appellee.

*Stason & Stason,* for other appellees.

VERMILION, J.—The plaintiffs and appellants hold unsatisfied deficiency judgments against the appellee Carter. This proceeding is under Section 11815 of the Code of 1924, to subject to the satisfaction of these judgments the property of the appellee Carter which is in the hands of the other defendants.

The petition set up a written contract between the appellees Pioneer Valley Savings Bank and E. W. Tone, on the one hand, and Carter, on the other, which recited the indebtedness of Carter to the bank, the execution of certain deeds by Carter and wife to Tone, as trustee for the bank, and the assignment or transfer of certain other assets to Tone, as trustee, or to the bank, all as security for Carter's indebtedness to the bank, and provided for the liquidation of the indebtedness by the sale of the property. The relief asked in the petition was the appointment of a receiver for all of the property of Carter, and an accounting by Tone, as trustee, and the bank, as beneficiary under the terms of the so-called trust agreement; and plaintiffs prayed that whatever assets Carter might have to which the bank had not a prior right or claim should be subjected to the payment of their judgments.

By cross-petition, the appellees Tone and the bank set up the execution of two certain deeds from Carter and wife to Tone, alleged that the deeds were intended as mortgages, to secure Carter's indebtedness to the bank, which was set out, including advancements made to Carter after the execution of the deeds, and prayed their foreclosure as such.

The transactions in question are somewhat more involved and intricate in their details than the foregoing statement would indicate; but, in view of the issues presented by the pleadings, it is not deemed necessary to go into them more fully. While appellants claim in argument that the deeds sought to be foreclosed as mortgages, and certain prior unrecorded mortgages by Carter to the bank, are fraudulent, no such issue is presented in the pleadings. The only issue in the case before us is as to the amount of Carter's indebtedness to the bank, or, more properly speaking,—since Carter has not appealed from the judgment against him on the cross-petition,—the amount of such indebtedness for which the cross-petitioners are entitled, as against the appellants, to a prior lien. The determination of these issues involves (1) the right of the bank to priority under its claimed

mortgage lien for certain advancements made to Carter after the rendition of appellants' judgments, and (2) the proper application of certain money received by the bank as the proceeds of the sale of certain of the mortgaged property.

I.  It is not questioned but that the deeds to Tone were intended to be, and were, in effect, mortgages. Such fact clearly appears, not only from the written agreement set up in the petition, but from the uncontradicted testimony as to the parol agreement of the parties prior to and at the time the deeds were executed.

Nor do we understand it to be disputed that a valid mortgage may be given, to secure future advances. Such has been the general holding of the courts from an early day. *Shirras v. Caig*, 7 Cranch (U. S.) 34. This is true although the mortgage does not show on its face that it was made to secure future advances, and that fact may be shown by parol. *Berry-Beall Dry Goods Co. v. Francis*, 104 Okla. 81 (230 Pac. 496); *Straeffer v. Rodman*, 146 Ky. 1 (Ann. Cas. 1913C 549, and note). Our own adherence to the doctrine is stated in *Corn Belt Tr. & Sav. Bank v. May*, 197 Iowa 54.

With it determined that the deeds to Tone as trustee were intended as mortgages, it is clear that the equitable title to the land remained in Carter, and became subject to the lien of plaintiffs' judgments. *Denegre v. Haun*, 13 Iowa 240; *Sutton v. Kelliher*, 115 Iowa 632; *Bilbo v. Ball*, 194 Iowa 875. There is no claim that plaintiffs had any lien prior to the rendition of the judgments, on March 10, 1923, while the deeds were executed and recorded on January 6, 1923. From this it would appear that the lien of the deeds, considered as mortgages, for the amount secured thereby was prior to that of the appellants' judgments. But it is contended by appellants that the appellees are only entitled to priority for the debt of Carter to the bank existing at the date of the deeds, and for such advancements as were made before the rendition of appellants' judgments.

Some confusion is to be found among authorities on the question as to whether, under a mortgage covering future advancements, where a subsequent lien attaches to the mortgaged property, the lien of the mortgage for advancements made subsequent thereto is prior. Pomeroy says that the fundamental

1. MORTGAGES: lien and priority: advancements after judgment.

error of the view that the mortgagee has priority only for advancements made before the record of a subsequent incumbrance "consists in its mistaken conception of the nature of an equitable lien, in regarding the lien as arising at and from the act of making the advance, instead of from the previous executory agreement by which land was bound as security for the future advances." 3 Pomeroy's Equity Jurisprudence (3d Ed.), Section 1199, note on page 2388.

The decisions setting forth the conflicting views upon the question will be found collated in the note to *Straeffer v. Rodman,* in Ann. Cas. 1913C 552. The facts of this case do not require us to determine whether the right of a mortgagee to priority for advances made after the attaching of a subsequent lien is absolute or not.

It has been frequently held that the right to priority for such advancements will be sustained, in the absence of actual notice to the first mortgagee of the subsequent lien. *Ackerman v. Hunsicker,* 85 N. Y. 43 (39 Am. Rep. 621); *McDaniels v. Colvin,* 16 Vt. 300 (42 Am. Dec. 512); *Tapia v. Demartini,* 77 Cal. 383 (19 Pac. 641); *Du Bois v. First Nat. Bank,* 43 Colo. 400 (96 Pac. 169).

Mere constructive notice of the second mortgage, such as is, in a proper case, imparted by the record, will not defeat the priority of the lien of a first mortgage for advancements made pursuant to it, and after the execution and recording of the second mortgage. The authorities announcing this doctrine, almost without exception, hold that actual notice is required, and that the burden is upon the second mortgagee to establish actual notice. This is the rule laid down in *Corn Belt Tr. & Sav. Bank v. May,* supra. We there said:

"The prior mortgagee is not required to search the record before each advancement."

The holding in that case is controlling here.

It appears that Tone, the cashier of the appellee bank, had actual notice of the mortgages which were the basis of appellants' judgments; but there is nothing in the record to show either that appellants had any lien against any of the property in question prior to the rendition of the judgments, or that appellees had any actual notice of the judgments.

Moreover, appellants are merely judgment creditors. and it

is established doctrine in this state that a judgment does not take priority over an unrecorded mortgage. *Seevers v. Delashmutt,* 11 Iowa 174; *Rice v. Kelso,* 57 Iowa 115. The lien of the judgment creditor is subject to equities in the property of the debtor existing in favor of third parties at the time of its rendition. *Parker v. Pierce,* 16 Iowa 227; *Keefe v. Cropper,* 196 Iowa 1179.

II. A portion of Carter's indebtedness to the appellee bank was rediscounted with the Live Stock National Bank, of Sioux City, and a portion of the real estate held by Tone was conveyed to the latter bank as security therefor. After the rendition of appellants' judgments, this real estate was sold, and other real estate taken in part payment therefor. The latter was then sold, as a part of the same transaction, and conveyed directly from the original holder to the ultimate purchaser. The cash proceeds of this transaction, after satisfying prior liens not here involved, were applied on Carter's indebtedness to the appellee bank, except $613.68, which was credited to Carter's account in the bank. The good faith and validity of this transaction, save as respects the application of the proceeds, are not questioned. Carter was the equitable owner of not only the land conveyed to the Live Stock National Bank, but of that received in exchange therefor; and the lien of appellants' judgments attached to such equitable title. The appellees, notwithstanding the claim that the deeds held by Tone were mortgages, assumed to deal with and convey the property as though they were vested with full title. Under such circumstances, it was incumbent on the bank to apply the entire net proceeds of the sale to the reduction of Carter's debt secured by its prior lien, and it had no right to turn part of the proceeds over to Carter, to the prejudice of appellants as junior lien holders. Equity certainly, in the interest of the junior lien holder, required this much at the hands of the prior lien holder, assuming to so deal with mortgaged property.

The decree properly gave to the appellee bank priority over appellants' judgments for the full amount of Carter's indebtedness to it, save in respect to the item of $613.68. To the extent of that amount, it was not entitled to priority. We are of the opinion that the court properly denied the prayer for a receiver, and that the decree sufficiently protected appellants' right to a

2. MORTGAGES: absolute deed as mortgage: sale: failure to apply proceeds: effect.

further accounting when the mortgaged property shall have
been applied to the satisfaction of the mortgage debt.

It is conceded that errors were made in the computation of
interest on a portion of the debt for which judgment was rendered on the cross-petition, and in the taxation of attorneys'
fees. The concession as to the former appears
to meet the complaint made. If this is not also
true as to the taxation of attorney fees, the
proper correction can be made by a motion to retax costs.
*Bankers' Iowa St. Bank v. Jordan,* 111 Iowa 324.

3. COSTS: taxation:
attorney fees:
motion to retax.

The judgment and decree, modified as indicated, will be
affirmed.—*Modified and affirmed.*

DE GRAFF, C. J., and STEVENS and FAVILLE, JJ., concur.