SARAH J. COOLEY et al., Appellants, v. R. T. WILL et al., Appellees.

No. 40720.

JUNE 20, 1931.

Paul W. Richards, for appellant.

Clifford Powell, for appellees R. T. and Mary H. Will.

Hysham & Billings, for appellee Thomas H. Rea.

STEVENS, J.—On February 17, 1919, appellant and appellee R. T. Will entered into a contract in writing for the purchase and sale of a sixty acre tract of land adjoining the city of Red Oak for an agreed consideration of $24,000. $500.00 was paid at the time the contract was executed and $1500.00 March 1st, 1920. The balance of $22,000 was evidenced by three promissory notes for $7333.33 each, secured by a separate mortgage upon twenty acres of the aforesaid tract.

The original contract was signed only by appellant and R. T. Will but each of the notes and interest coupons attached thereto and the several mortgages were signed by both R. T. and Mary H. Will, husband and wife. Default having occurred in the payment of the several notes, separate actions were commenced in the district court of Montgomery county to foreclose the respective mortgages. Mary H. Will appeared to each of the actions and filed answer admitting her signature to the several instruments but alleging that they were signed by her without consideration and for the sole purpose of releasing dower in the land. The trial resulted as already stated.

It appears without controversy that the land was purchased by R. T. Will with no other participation or concurrence of his wife therein than the signing of the notes and mortgages. The contract executed by appellant conveyed the aforesaid premises to R. T. Will. Negotiations for the purchase of the tract appear to have been initiated by Will with a real estate agent by the name of Auman. Three conferences were had between appellant, Auman who was her agent, Daniel B. Gunn her son-in-law, and R. T. Will, at the home of appellant. Mrs. Will was

not present at any of these conferences and R. T. Will disclaimed recollection of Gunn's being present at any of them. Appellant, testifying in her own behalf, testified that she at all times demanded that Mrs. Will, who was the daughter of H. C. Houghton, who at the time of his death, which occurred subsequently, was possessed of considerable property, sign the papers. This demand of appellant's was never communicated to Mrs. Will with whom appellant was not acquainted. Will testified that he had no recollection whatever that anything was said by anyone in any of the conferences that appellant desired his wife to sign the papers. It is clear from the testimony that at the time same were signed by her, Mrs. Will was wholly ignorant of the wishes or demands of appellant that she become a party thereto. It is agreed by all of the parties that at one of the conferences, doubtless the second one, Auman, appellant's agent, made memoranda of the necessary data for the purpose of preparing a contract. Nothing is said in the contract, which was later prepared by him, to the effect that Mrs. Will should sign the notes and mortgages. If appellant at either the first or second conference demanded that the notes and mortgages be signed by Mrs. Will, her request was ignored by Auman when he prepared the contract. Auman was not a witness upon the trial. Neither appellant nor Gunn, who was a witness and testified fully to the transactions, was able to say definitely that the demand that Mrs. Will sign the papers was ever made in the presence of her husband. Appellant testified that the original contract was signed in the presence of Gunn, Auman, R. T. Will and herself. She was uncertain in her testimony whether the demand that Mrs. Will sign the papers was made before the contract was executed or not. In the course of her testimony, in answer to a question on cross-examination, she said:

"Q. Now, on which of those trips was it that this conversation with reference to Mrs. Will signing the notes and mortgages, took place?

"A. That was when we were fixing the time permanently, when we were settling up, I said I wanted R. T. Will and his wife both on the mortgages and notes, and the agent said I will see to that, he says that is all right, I will attend to that. Now, I didn't see them sign that."

She also testified:

"I never had any conversation with Mrs. Will, relative to this. My conversations relative to Mrs. Will's signature was had with Mr. Auman and D. B. Gunn. I don't remember whether Mr. Will was present or not. Mr. Auman said, 'I will attend to it.' I don't know whether Mr. Will requested or not to have his wife's signature. Mr. Auman was paid by me."

The witness Gunn was unable to say whether the request of appellant that Mrs. Will sign the notes and mortgage was made in the presence of Mr. Will. On the occasion when the terms of the purchase were agreed upon and Auman left the conference to prepare the contract, Gunn was present. Concerning what occurred at this time, he testified as follows:

"They departed and I remember of having a talk with Mrs. Cooley and she saying 'we must have Mrs. Will on the note because her father is wealthy and I know nothing about R. T. Will.' Mr. Auman said, 'R. T. Will is responsible.' Mrs. Cooley said, 'Well I want them both on the notes and mortgages.' Auman said, 'I will see that they are.' I won't say positive whether R. T. Will was in the dining room at that time or not. This conversation just related was during the meeting of R. T. Will, Auman, myself and Mrs. Cooley."

Appellant further testified that the conversations with reference to Mrs. Will's signature to the instrument were had with Mr. Auman and Mr. Gunn and that she did not remember whether Mr. Will was present or not. The record does not disclose who prepared the notes and mortgages but it does appear therefrom that they were delivered to R. T. Will by Auman. Will testified that he took the papers home and requested his wife to sign them; that he told her this was necessary because of her dower interest in the property. Her testimony was, substantially, to the same effect.

It is clear from all of the testimony that Mary H. Will received no consideration of any kind out of the transaction. She was permitted to testify in the form of a conclusion what her intention was at the time she signed the instrument. Objection was interposed to this testimony upon the ground that the terms

of a written agreement may not be varied by parol or by testimony of the secret intention of one of the parties.

In view of the obvious fact that the case must be determined upon broader grounds, we deem it unnecessary to consider the contention of appellant at this point.

As only the original parties to the instruments are involved, it was permissible for appellee to show by parol evidence that the same were executed by her without consideration. State Savings Bank v. Osborn, 188 Iowa 168; Insell v. McDaniels, 201 Iowa 533.

As previously announced, the single defense offered by the appellee Mary H. Will is that she signed the instruments for the purpose of and with the understanding that her signature was essential to the release of dower. In several late cases, this court has been called upon to pass upon the availability of a plea of consideration on the part of the wife who has signed notes and mortgages executed by the husband in transactions to which she was not otherwise a party. The doctrine of these cases is neither new nor novel. If there is anything in the cases to challenge particular attention, it is the somewhat unusual facts and circumstances upon which the defense of want of consideration is based. The controlling question in this, as in the prior cases, is one of fact, rather than a question of law.

Hinman v. Treinen, 196 Iowa 701, went off on a question of pleading. In LeFleur v. Caldwell, 196 Iowa 727, the plea of want of consideration was sustained. The basis of the holding in that case was that the transaction in which the note in suit was given was wholly with the husband and without any thought on the part of the principals that the wife would sign the note. It was admitted that she received no independent consideration for her signature.

Insell v. McDaniels, 201 Iowa 533, and Gorman v. Sampica, 202 Iowa 802, involved similar transactions and the decision in each of these cases was rested upon the holding of the prior cases. The doctrine of the foregoing cases is fully recognized in American Com. & Sav. Bank v. Kramer, 206 Iowa 49, and Millard v. Curtis, 208 Iowa 682, although a different result was attained in these cases.

The testimony in the case before us is without dispute that Mrs. Will received no independent consideration for her sig-

nature. She had no part in the original transaction nor did she have any other interest therein than as the wife of R. T. Will. Mrs. Will signed the instrument, as already stated, at the request of her husband who informed her that her signature was necessary to release dower. Appellant was not acquainted with appellee and had no conversation whatever with her concerning the transaction. The appellee R. T. Will testified that he had no recollection that anything was said to him as to his wife's signing the papers. The evidence is without conflict that no one ever informed Mrs. Will that appellant desired her to sign. It is doubtful whether the wish of appellant expressed to her agent Auman was ever communicated to Will. It is certain that Auman made a memorandum of the conversation at the final conference when the terms of the sale were finally agreed upon for the express purpose of preparing the written contract. Following this conference, Auman, to whom the duty was entrusted, prepared the contract or procured some one else to do so. In it is no reference to the claimed requirement that Mrs. Will sign the papers. The agreement is wholly silent on that point. This instrument, when executed, became the contract of the parties. Appellant could not thereafter demand that Mrs. Will sign the papers. To bind her a new consideration was necessary and there was no new or independent consideration. Several months elapsed between the date of the preliminary contract and the date of the instruments involved in this action. Neither Will nor his wife are in any way bound by the demand of appellant if the same was communicated only to Auman and her son-in-law.

The facts of this case bring it squarely within the rule announced in the cases cited. Mrs. Will was not a party to the transaction between appellant and her husband. She neither signed the contract which resulted therefrom nor did she in any way become a party thereto. She has fully met the burden imposed upon her to establish her defense by the preponderance of the evidence.

II. The mortgage sought to be foreclosed contains no provision for the appointment of a receiver. It does, however, indirectly at least, pledge the rents and profits as security for the mortgage indebtedness. The evidence quite clearly shows that R. T. Will is without property which may be subjected to

the payment of a deficiency judgment and that the land for which he agreed to pay $400.00 per acre is not now worth more than $150 per acre. A deficiency judgment is certain. There is, therefore, a clear showing that the mortgaged property is inadequate to pay the debts and a deficiency of several thousand dollars is certain to result from a sale thereof. Having pledged the rents and profits which can be reached in no other way, it seems to us that the court abused its discretion in not granting the prayer of the petition for the appointment of a receiver. This court is, of course, reluctant to interfere with the discretion of the trial courts in such matters. Security Inv. Co. v. Ose, 205 Iowa 1013.

Nevertheless in a proper case, the court will not refrain from setting aside the order of the trial court and directing that a receiver be appointed. It follows that the order refusing the appointment of a receiver is reversed and the cause remanded with directions that one be appointed and in all other respects the judgment must be affirmed.—Reversed in part; affirmed in part.

ALBERT, MORLING, KINDIG, and EVANS, JJ., concur.