FIRST BANK & TRUST COMPANY of Ottumwa, Appellant, v. FRANK G. WELCH et al., Appellees.

No. 42640.

DECEMBER 26, 1934.

Jones & White, for appellant.

Roberts & Roberts, for appellees Frank G., Edna B., and Anna E. Welch.

ANDERSON, J.—This is an action in equity for judgment upon promissory notes and to foreclose a mortgage on real estate securing the same. All defendants default except Frank G., Edna B., and Anna E. Welch. The issues raised by the answers of the named defendants and the counterclaim by Frank G. Welch are: (1) Does the mortgage sought to be foreclosed secure future advances made to the defendant Frank G. Welch? (2) Did the plaintiff bank act illegally in appropriating and applying the proceeds of a check deposited with it for collection, and are the defendants entitled to have the proceeds of such check credited upon certain indebtedness due the bank? The trial court entered judgment and decree upon the indebtedness due the bank at the time the mortgage was executed, but denied a lien for future advancements, and also held that the bank had no legal right to appropriate and make application of the proceeds of the check, and that the defendants were entitled to credit for the amount of the check upon the original mortgage note. The plaintiff appeals.

The material facts as disclosed by the record are not in serious dispute, and are as follows:

On December 28, 1929, the defendants Frank G. Welch and Edna B. Welch, as husband and wife, executed and delivered to the Kirkville Savings Bank a note for $5,000 due December 28, 1932, and on May 10, 1930, the same defendants executed and delivered a mortgage securing the said note upon real estate owned by Frank G. Welch. This mortgage contained the following provision:

"It is also expressly agreed that this conveyance shall stand and be security for all debts or sums additional to those herein expressly named, whether now due or hereafter accruing to said mortgagee, and all advances of money or interest or prior liens."

On June 9, 1930, the defendants Frank G. and Edna B. Welch conveyed the mortgaged property to Anna E. Welch subject to the terms and conditions of the mortgage. This deed was recorded June 29, 1931.

On December 29, 1930, the Kirkville Savings Bank, mortgagee, loaned to the defendant Frank G. Welch an additional $600 and took his note therefor due in six months; and on June 10, 1931, the same bank loaned to the same defendant an additional sum of $290 and took his note therefor due in six months. Late in 1931, the plaintiff bank, First Bank & Trust Company, was organized and assumed the depository liabilities of four or five other banks, including the Kirkville Savings Bank, and the consolidated banks, including the Kirkville Savings Bank, transferred all their assets to the plaintiff bank. Among the assets so transferred by the Kirkville Savings Bank were the three notes heretofore mentioned. The mortgage in question was assigned to the plaintiff bank on October 26, 1931. It will be noticed that the title to the property covered by the mortgage was conveyed to the defendant Anna E. Welch prior to the execution of the notes for $600 and $290, respectively, although the deed conveying the property was not recorded until after the execution of the last two mentioned notes. It is clear that the wife, Edna B. Welch, had nothing to do with the execution of the two subsequent notes, did not know they had been executed, and received none of the consideration therefor. The defendants claim that the provision in the mortgage quoted above is not sufficient under the circumstances to secure debts other than the original note of $5,000 secured thereby; that while the wife, Edna B. Welch, signed the original note and mortgage, she did so only for the purpose of releasing her inchoate right of dower in the real estate mortgaged for the security of the $5,000 note only. The appellant bank contends that a mortgage given to secure future advancements and after acquired indebtedness is binding and enforceable, and that advances made thereunder must be held secured by the mortgage, and as sustaining this contention the appellant cites and relies upon Corn Belt Savings Bank v. Kriz, 207 Iowa 11, 219 N. W. 503; Everist v. Carter, 202 Iowa 498, 210 N. W. 559; Turnis v. Ballou, 201 Iowa 468, 205 N. W. 746; and Corn Belt Trust & Savings Bank v. May, 197 Iowa 54, 196 N. W. 735.

In Corn Belt Savings Bank v. Kriz, supra, the mortgage as to future advancements was as follows:

"The said mortgagor hereby covenants * * * to pay all other indebtedness that the mortgagee may hold or acquire against said mortgagor, or *either of them*, and pay any and all notes and other obligations which the mortgagor, or *either of them*, may at any time be owing the mortgagee during the existence of this mortgage."

It will be noticed that the mortgage involved in the case at bar did not contain the italicized words. The difference in the two clauses is patent. In the clause in the cited case both husband and wife made their interests in the real estate subject to the payment of other indebtedness of either. This was not done in the instant case.

In the case of Everist v. Carter, supra, the question we have under consideration was apparently not involved.

In Turnis v. Ballou, supra, the clause as to future advancements was the same, practically, as that involved in Corn Belt Savings Bank v. Kriz.

In the other cases cited by the appellant, the question here involved does not seem to have been presented or determined.

Provisions inserted in printed blanks or forms of mortgage purporting to secure future advances or indebtedness are carefully scrutinized and strictly construed by the courts. The provision here in question is quite indefinite and uncertain. It will be noticed that it does not specify whose debts it attempts to secure, nor to whom such debts may be payable, nor to whom the advances of money or interest must be made in order that it be secured by this clause of the mortgage. Were we to hold, as the appellant contends, that this clause is security for future debts and advancements acquired against the husband alone, or advanced to the husband alone without the knowledge, participation, or consent of the wife, then the wife could be induced to sign a small mortgage upon a valuable homestead and the husband could proceed without her knowledge, consent, or acquiescence to include in such mortgage future debts or advancements to him alone and thus entirely wipe out the remaining interest of the wife in the mortgaged property. We do not think that equity should countenance such a construction of the mortgage clause here involved.

We have repeatedly held that where the wife signs a mortgage and note with her husband for the purpose only of releasing her dower interest and with no other consideration, she cannot be held liable upon the indebtedness. Insell v. McDaniels, 201 Iowa 533, 207 N. W. 533; LeFleur v. Caldwell, 196 Iowa 727, 195 N. W.

234; Hinman v. Treinen, 196 Iowa 701, 195 N. W. 345, and Cooley v. Will, 212 Iowa 701, 237 N. W. 315.

In Sullivan v. Murphy, 212 Iowa 159, 232 N. W. 267, we had the question here involved under consideration. In that case, however, the clause as to future advancements was specific and expressly provided that the mortgage should secure any claim held by the mortgagee against the mortgagors, or either of them. The mortgage originally secured a note for $1,200, and it was attempted to include in the foreclosure another note signed by the husband alone for $1,500. In that case we used the following language:

"It is a just inference from this undisputed evidence that the defendants understood that the mortgage did not secure the $1,500 note. The language of the mortgage would justify the ordinary reader in concluding that its purpose was to secure the payment of the $1,200 note named in the condition, the repayment of advances necessary for the protection of the security, and future advances to which the parties might agree. The use of printed forms for promissory notes and mortgages is so universal that we may take judicial notice of the custom. The mortgage is well adapted in its phraseology to misapprehension."

In special concurring opinions by Justices Evans and Kindig, we find this language:

"This proviso purports to secure any 'claims held by the mortgagee against the mortgagors or either of them for any future loans, advances or indebtedness accruing from said grantors or their assigns to said grantee or his assigns,' etc. The mortgage did not in terms purport to secure any other presently existing indebtedness than the $1,200 note. In addition to the $1,200 note, it did purport to secure 'future indebtedness accruing from said grantors.' Clearly this proviso contemplated a future meeting of the minds of the parties to the contract upon the accrual of the future indebtedness. So far as the presently existing indebtedness was concerned, the minds of the parties met only upon the $1,200 note. So far as future indebtedness was concerned, the meeting of the minds was incomplete and contingent upon a future meeting of such minds upon the creation of such future indebtedness."

See, also, Commercial State Bank v. Ireland, 215 Iowa 241, 245 N. W. 224.

Under the rules announced in our prior cases, we are constrained to hold that the mortgage here involved cannot be held to secure the subsequent indebtedness represented by the two notes of $600 and $290, respectively, signed by the husband alone.

The other question involved on this appeal is as to the application of the proceeds of a $443.04 check, and the pertinent facts relative to this question are as follows: In June, 1933, the defendant Frank G. Welch secured a check as the purchase price of some property sold by him, drawn upon a Cedar Rapids bank for $443.04. He took this check to the cashier of the Eddyville bank for the purpose of selling it or obtaining the cash thereon. Welch was not a customer of the Eddyville bank, neither was he a customer of the plaintiff bank. It seems to be assumed in the record that the Eddyville bank was a branch only of the plaintiff bank. A Mr. Bonnifield was president of the plaintiff bank. Mr. Welch had never done any business with the Eddyville bank, and his sole purpose of going to that bank with the check in question was to obtain cash represented by the check. He was told by the cashier that he could not buy or cash the check, but that he would collect it for him, and thereupon Welch indorsed the check and delivered it to Mr. Burton, the cashier. Neither Mr. Welch nor the cashier had any thought, so far as shown by the record, that Welch was parting with the title to the check or the proceeds thereof. It was apparently the thought of both that the cashier would get the money on the check and deliver it to Mr. Welch as soon as collected. It appears that the proceeds of the check in some manner came into the hands of the plaintiff bank, and, instead of returning it to the Eddyville bank to be delivered to Mr. Welch, credited the same upon the $600 note of Welch, which is involved in this action. The cashier of the Eddyville bank attempted to get the money from the Ottumwa bank, so it could be delivered to Mr. Welch. Mr. Bonnifield, the president of the Ottumwa bank, understood the transaction as did Mr. Welch and Mr. Burton. He told Mr. Welch on two different occasions that if he left the check with the Eddyville bank as he claimed, either the check or the money ought to be there for him. Welch never authorized the bank to use or appropriate the proceeds of the check. He never intended it as a deposit in any bank. No officer of either the Eddyville bank or the Ottumwa bank ever suggested to Welch that they had a right to apply the proceeds to Welch's indebtedness, and Welch did not know that such had been done until a long time thereafter. In this case the

324

defendants are asking that the proceeds of the check amounting to $443.04 be credited upon the $5,000 note secured by the real estate mortgage, and the trial court so credited the amount. It must be noticed that Welch was not a depositor or customer of either of the banks involved, and that the check in question was left with the Eddyville bank for the specific purpose of collection and with the understanding and intent that the proceeds should be paid to Welch when the check was collected. Under these circumstances, we are constrained to hold that the deposit or delivery of the check for the special purpose as indicated and, under the special agreement, could not rightfully be appropriated by the plaintiff bank. Smith v. Sanborn State Bank, 147 Iowa 640, 126 N. W. 779, 30 L. R. A. (N. S.) 517, 140 Am. St. Rep. 336; Dolph v. Cross, 153 Iowa 289, 133 N. W. 669; Hanby v. First Sav. Bank, 197 Iowa 150, 197 N. W. 51; Andrew v. County Sav. Bank, 209 Iowa 271, 228 N. W. 55; Townsend v. Athelstan Bank, 212 Iowa 1078, 237 N. W. 356; Northwestern National Bank v. Peoples State Bank, 109 Kan. 506, 200 P. 278, 19 A. L. R. 551; Trustees of Elon College v. Elon Banking & Trust Co., 182 N. C. 298, 109 S. E. 6, 17 A. L. R. 1205.

It follows from the foregoing discussion that the trial court did not err in holding that the mortgage in question did not secure the two subsequent notes, and in allowing a credit upon the $5,000 note for the proceeds of the check in question. An affirmance necessarily follows.—Affirmed.

MITCHELL, C. J., and EVANS, STEVENS, KINDIG, ALBERT, KINTZINGER, and DONEGAN, JJ., concur.