CAROLYN M. STERNER, Appellee, v. SPRINGVILLE SAVINGS BANK, D. W. BATES, Receiver, Appellants.

No. 43365.

JUNE 19, 1936.

Dale O. Stentz and L. D. Dennis, for appellants.

E. A. Johnson, for appellee.

MITCHELL, J.—Carolyn M. Sterner commenced this suit in equity against the Springville Savings Bank and D. W. Bates, Superintendent of Banking, as Receiver, to cancel a certain promissory note signed by her and her brother, payable to the Springville Savings Bank. She alleged that said note was without any consideration and that it is void; that she should be released from all liability; and prayed for general equitable relief.

To her petition defendants filed answer, in which they alleged that there was ample consideration; that the petition itself did not make out a case for the exercise of equitable jurisdiction by the court, and that by waiting two and a half years before commencing suit she was guilty of such laches and delay as to deny her relief in a court of equity. In addition to filing answer, defendants filed a cross petition, in which they prayed for judgment upon the note, and for costs, including attorney's fees.

There was a trial to the court, and judgment and decree entered in favor of plaintiff. Said note was cancelled and held for naught as to her, and the cross petition of the receiver was dismissed. Defendants being dissatisfied with the order and decree, have appealed to this court.

We must look to the record to ascertain the facts.

I. The Springville Savings Bank early in July of 1932 found itself in financial troubles and one Freyer, a bank examiner, was sent by the superintendent of banking to take charge of said institution. Upon an investigation of the books the examiner found that there was a defalcation of the bank's funds of approximately $18,000. Following the discovery by the examiner, he took the matter up with some of the officers of the bank and learned that they had been making questionable loans to a couple of confidence men who were then operating in

Linn county. It also appears from the record that the officers making the loans were paid commissions by these confidence men for making the loans to them. When these officers of the bank found that the loans were bogus and the bank was defrauded, they individually began making contributions to cover the loss. In arriving at the amount of money which each of the officers and directors was to raise as his portion of the deficit, it was agreed that Paul W. Sterner, who was Carolyn M. Sterner's brother, and assistant cashier and a director of the bank, should raise the sum of $7,500. The officers and directors of the bank all having agreed to contribute the full amount of the defalcation, which was in the total sum of $18,000, the bank examiner Freyer drew up an agreement covering same, which is designated as "Plaintiff's Exhibit 2". In this agreement Paul W. Sterner agreed to execute a first mortgage on certain described land for the sum of $7,500 for the term of five years, at five per cent, and that his sister would sign said mortgage. It appeared that the examiner desired that Paul W. Sterner give security for the note which he was executing; that he and his sister Carolyn were the heirs of one Milton Richard Sterner, and as such had an interest in the real estate described in Exhibit 2. The examiner made a trip down to where the real estate was located and looked it over. After Exhibit 2 was signed and it was agreed that Paul W. Sterner was to secure the signature of his sister to the mortgage, the examiner insisted that the sister not only sign the mortgage but the note. Paul Sterner took the note and mortgage which the receiver had made out, and asked his sister to sign same, but she refused. She never talked with anyone about this matter except her brother. However, after several visits and some urging upon the part of her brother, she signed the note. There is no claim that she received anything by way of value for attaching her signature to the note. She held six shares of stock in the bank, and paid her assessment. She owed the bank a note, and that has been paid and satisfied.

■■■ It is the claim of the appellant that the petition does not allege facts sufficient to warrant the exercise of equitable jurisdiction or the granting of equitable relief, and especially such drastic relief as is involved in the cancellation of a written instrument.

The general rule defining her duty in this respect is set

forth in 9 C. J., page 1232, section 144, under topic of "Cancellation of Instruments":

"A general rule, compliance with which is always insisted on by the courts, is that the bill or complaint must present a state of facts bringing the case within some one of the well defined grounds of equitable jurisdiction, and must be founded on a theory under which plaintiff is entitled to the relief sought, and state all the facts essential to support such theory."

The petition in this case sets out the facts covering the signing of the note; that it was signed at the request of her brother and against her will and over her objections, which were made to her brother and communicated to the examiner; that there was absolutely no consideration of any kind for her signing said note; that it is the purpose and intent of the defendants to enforce said note as against the plaintiff to her irreparable damage and tremendous loss; that due to the fact that there was no consideration the said note is absolutely void as far as this plaintiff is concerned, and that she should be released from all liability thereon. The petition sets forth clearly the facts which plaintiff alleges as her grounds for the cancellation of the note. If she did not commence this action in equity to cancel said instrument, there was no way that she could secure relief if the allegations of her petition were true. In view of such a situation, with a $7,500 note in the hands of the bank examiner, who was threatening enforcement of said obligation—a negotiable instrument, that might be transferred to some innocent purchaser—with the claim made that there was no consideration, and if there was no consideration for the signing of the note, then it was void, Carolyn M. Sterner had no remedy except the remedy of asking a court of equity to cancel the instrument in the manner that she did.

II. We come now to the main contention in this case.

It is the claim of the appellee that there was no consideration for the signing of the note, and it is therefore void. Appellee was not in any way responsible for the loss which had occurred in the bank prior to the time that the examiner took charge. No one makes any such claim. After ascertaining the losses, the examiner took up with the officers and directors, including Paul Sterner, the question of reimbursing the bank for the losses which had occurred. They finally agreed upon the

amounts to be paid, and a written instrument was prepared. The important part of said written instrument, as far as this case is concerned, is as follows:

"I, Paul Sterner, hereby agree together with my sister, to execute a first mortgage on the farm in Section twenty-three, Township eighty-four, Range five, Linn County, Iowa, containing 133 acres, more or less, for the sum of $7,500, for the term of five years, at five per cent semi-annual interest, to the order of L. A. Andrew, Receiver of said Bank.

(Signed)    Paul W. Sterner."

This was the agreement that Paul W. Sterner entered into with the examiner of the bank. The agreement, it will be noted, was "to secure his sister's signature to a mortgage" upon the real estate described. At no time, as far as this record shows, prior to the signing of this agreement, was there any talk or agreement that Paul Sterner was to secure the signature of his sister to this $7,500 note. The examiner investigated the land, made a trip down there to ascertain whether or not it was sufficient security. The reason for securing the signature of Carolyn Sterner to the mortgage was that as an heir she had an interest in said real estate. At the time that Paul Sterner signed Exhibit 2, as far as the bank was concerned the transaction covering the settlement of the defalcation was closed. It was after that that the examiner insisted that Paul Sterner secure the signature of his sister to the note involved in this suit. There is no claim made here that appellee received any consideration for the signing of this note. She was not a party to this contract. She was never consulted. She had no information in regard to the transaction. Her name was simply procured on the note thru her brother at the insistance of the examiner, and only after said contracts were made. She received nothing for her signature. The bank and the receiver sustained no loss, for the loss had already been sustained.

Thus we find that this case comes under the rule laid down in Cooley v. Will, 212 Iowa 701, at pages 705, 706, 237 N. W. 315, 317, in which Justice Stevens, speaking for this court, said:

"Hinman v. Treinen, 196 Iowa 701, 195 N. W. 345, went off on a question of pleading. In Le Fleur v. Caldwell, 196 Iowa 727, 195 N. W. 234, the plea of want of consideration was sus-

tained. The basis of the holding in that case was that the transaction in which the note in suit was given was wholly with the husband and without any thought on the part of the principals that the wife would sign the note. It was admitted that she received no independent consideration for her signature.

"Insell v. McDaniels, 201 Iowa 533, 207 N. W. 533, and Gorman v. Sampica, 202 Iowa 802, 211 N. W. 429, involved similar transactions and the decision in each of these cases was rested upon the holding of the prior cases. The doctrine of the foregoing cases is fully recognized in American Com. & Sav. Bank v. Kramer, 206 Iowa 49, 219 N. W. 931, and Millard v. Curtis, 208 Iowa 682, 223 N. W. 489, although a different result was attained in these cases.

"The testimony in the case before us is without dispute that Mrs. Will received no independent consideration for her signature. She had no part in the original transaction nor did she have any other interest therein than as the wife of R. T. Will. * * *

"The facts of this case bring it squarely within the rule announced in the cases cited. Mrs. Will was not a party to the transaction between appellant and her husband. She neither signed the contract which resulted therefrom nor did she in any way become a party thereto. She has fully met the burden imposed upon her to establish her defense by the preponderance of the evidence."

And so, in the case at bar, the principal maker of the obligation was under no promise or duty to procure the signature of his sister. Carolyn Sterner's signature was attached by her after the contract was already completed. It was not done pursuant to any previous promise or condition. It is conceded that she received nothing of value for signing the note, and the payee parted with nothing.

■■■ III. The appellant complains that the appellee is guilty of laches in that she did not commence this lawsuit prior to the time that it was commenced. With this we cannot agree. The note was not yet due. And there is no showing of any loss sustained by appellant thru her failure to commence the suit prior to the time she did commence it.

Appellants seem to think, and argued orally in this court, that appellee was preparing to deny liability upon the mortgage

that she had signed. In answer to this, the attorney of record for appellee stated in open court that appellee admitted her liability upon the mortgage and was willing that the property covered by the mortgage should be used in the payment of the obligation which her brother Paul Sterner owed to the bank.

It therefore follows that the judgment and decree of the lower court must be, and it is hereby, Affirmed.

Chief Justice and all Justices concur.