EMMA E. DIEHL v. LUCIE J. SEELEY DAVIS *et al.*

No. 14,809   (88 Pac. 532.)

SYLLABUS BY THE COURT.

SURETYSHIP—*Release of Surety—Discharge of Securities.* If, as
surety for her husband, a wife sign his note and secure it by
a mortgage of her real estate, an agreement extending the
time for the payment of the note which discharges her per-
sonal liability will discharge the mortgage security also.

Error from Johnson district court; WINFIELD H.
SHELDON, judge. Opinion filed January 5, 1907. Re-
versed.

*I. O. Pickering, pro se,* and for plaintiff in error.

*Lewis G. Ferrel,* for defendant in error Lucie J.
Seeley Davis.

The opinion of the court was delivered by

BURCH, J.: The suit in the district court was
brought to obtain a personal judgment on a promissory
note to the plaintiff signed by E. P. Diehl and Emma
Diehl, and to foreclose a real-estate mortgage given by
the makers of the note to secure its payment. The
Diehls are husband and wife, and the mortgaged land
belongs to Mrs. Diehl. Mrs. Diehl answered that she
was only a surety for her husband; that the time for
the payment of her husband's obligation had been ex-
tended by a contract in writing concluded and indorsed
on the note without her knowledge or consent, and that
she and her land were released from further liability.
After a trial the court found in favor of Mrs. Diehl,
discharged her personally, rendered judgment in her
favor for costs, but held her land to be bound and
ordered a foreclosure of the mortgage. Of the adverse
portion of this judgment she complains.

When Mrs. Diehl undertook to become surety for her
husband she engaged to protect a certain specific ob-
ligation. She advanced two classes of security—her

personal liability, enforceable against her assets generally, and the real estate described in the mortgage. The contract which she undertook to secure has been altered without her knowledge or consent. An altogether different one has been substituted, which she has not approved. Why her land should be appropriated for something to which she has never pledged it is not apparent, it being conceded that the other security which she gave is released.

The question involved has already been decided by this court in the case of *Hubbard v. Ogden*, 22 Kan. 363. The syllabus of that case reads:

"An agreement upon sufficient consideration, made between the creditor and principal debtor, extending the time for the payment of the debt, without the knowledge or consent of the surety, releases the surety; and it makes no difference whether the contract is express or implied.

"Where a wife mortgages her separate real estate to secure the payment of her husband's debt, and after the debt becomes due the husband pays and the creditor receives interest in advance on the debt for another period of six months, and this is done without the knowledge or consent of the wife, *held*, that said separate property of the wife is released as security for the payment of said debt."

The fact that besides her separate property Mrs. Diehl also put up her personal liability as security does not change the rule. Whatever discharges one kind of security certainly discharges the other. The decision in *Hubbard v. Ogden* is in full accord with the law as declared elsewhere in the United States. The subject is treated fully in Ackley's edition of Brandt on Suretyship (3d ed., §§ 43-45), where the cases are collated.

In the year 1891 the chancery division of the English supreme court of judicature discussed the proposition presented as follows:

"The plaintiff's counsel, however, contend that, although Miss Buckenham's covenant is gone, by reason of time having been given to the principal debtor, the security which she gave remains. With all their learn-

ing and research, the plaintiff's counsel were not able to produce any authority for this proposition. The reason may be that no one had ever previously thought of raising such a contention. For the defendants two cases were cited. The first was *Wheatley v. Bastow,* 7 D. M. & G. 261. This is not an express decision on the point. There a brother and sister, entitled in moieties to a reversionary interest in a fund in court, mortgaged it to secure the debt of the brother, the sister joining as surety only. On the facts the court decided that the surety was not discharged. But it seems to have been assumed throughout the case, both by the eminent counsel engaged, and by the court, consisting of Lords Justices Knight Bruce and Turner, that, if the facts had shown a release, the mortgaged property of the surety would have been discharged. The second case is *Hodgson v. Hodgson,* 2 Keen, 704. There it was held that the release of one cosurety discharged the security given by the other. This is in point. On principle I can find no ground for the proposition that, although the surety's covenant is gone by alteration of the contract with the principal debtor, yet the security which the surety has given remains bound. A surety pledges his personal credit by note, covenant, or otherwise, and by the same contract pledges also his goods or charges, or mortgages his lands, as security for the same debt. The alteration of the contract without his consent or without the reservation of rights against him affects his position equally in regard to every part of his contract of suretyship. As was said by Lord Justice Cotton, in *Holme v. Brunskill,* 3 Q. B. D. 505: 'The cases as to discharge of a surety by an agreement made by the creditor, to give time to the principal debtor, are only an exemplification of the rule stated by Lord Loughborough, in *Rees v. Berrington,* 2 Ves. 540, "It is the clearest and most evident equity not to carry on any transaction without the knowledge of him (the surety), who must necessarily have a concern in every transaction with the principal debtor. You cannot keep him bound and transact his affairs (for they are as much his as your own) without consulting him." ' The true rule, as the Lord Justice went on to show, is that if there is any agreement between the principals with reference to the contract guaranteed the surety ought to be consulted, and that if there is any alteration which is not obviously either unsubstan-

tial or for the benefit of the surety he is to be the sole judge whether he will remain liable. This reasoning applies with the same force to a security given by the surety as it does to a personal obligation entered into by him." (*Bolton v. Salmon* [1891], 2 Ch. 48, 53.)

The plaintiff cites *Perry v. Horack*, 63 Kan. 88, 64 Pac. 990, 88 Am. St. Rep. 225, and *Jackson v. Longwell*, 63 Kan. 93, 64 Pac. 991, as qualifying or overturning the doctrine of *Hubbard v. Ogden*, but they have no such effect. No question of suretyship was involved in either of them. In *Perry v. Horack* a husband and his wife executed a note and secured it by a mortgage upon their homestead. The husband died and his children inherited one-half of the land, subject to the mortgage. The widow, who was a principal obligor, kept the debt alive by making payments upon it, and it was held the lien of the mortgage continued. In *Jackson v. Longwell* a husband and wife were joint makers of a note and both joined in a mortgage upon the wife's land to secure it. The note became barred as to the wife but the husband made partial payments which tolled the statute as to him. It was held the mortgage remained in force. In *Jackson v. Longwell* the case of *Hubbard v. Ogden* was expressly distinguished. The obligation of the joint contract was not modified or destroyed. Only the remedy against the wife was barred. Having pledged her land to secure an indebtedness which her husband could keep alive by acts of partial satisfaction, the lien of the mortgage continued. But this does not argue that land mortgaged to secure one kind of a contract may be appropriated to the satisfaction of another, without the mortgagor's consent.

The case of *Jenness v. Cutler*, 12 Kan. 500, also cited by the plaintiff, has no application. In that case the debt and the land were both the husband's. The wife merely gave her consent that the husband might encumber the homestead and was not a surety at all in the proper sense of the term.

The court made a general finding in favor of Mrs.

Diehl, besides finding the material facts specially. The plaintiff argues against the findings, claiming that Mrs. Diehl was not a surety, that the plaintiff had no knowledge of the fact if she were, and that there was no consideration for the contract of extension. The evidence relating to the fact of suretyship was convincing. The evidence of knowledge on the part of the mortgagee of the suretyship relation was conflicting, but ample to sustain the court's conclusion. The written contract of extension disclosed a consideration. The mortgagor gave up the right to pay the debt at once and stop interest, and bound himself to keep the money and pay interest upon it for eighteen months. The mortgagee gave up her present right to receive, or if not paid to sue for, her money, and bound herself not to demand it for eighteen months. (*Lorimer v. Fairchild,* 68 Kan. 328, 75 Pac. 124.)

It follows that the judgment of foreclosure was erroneous and that the property affected should be discharged from the lien of the mortgage.

The rights of a second mortgagee were adjusted according to the theory adopted by the trial court, and he files a petition in error on his own account. The first mortgage being out of the way, he should be given a first lien.

The judgment of the district court is reversed and the cause remanded, with direction to enter judgment in consonance with the views expressed in this opinion.