183 So.2d 195 (1966)
Albert COLE et al., Petitioners,
v.
The EXCHANGE NATIONAL BANK OF CHICAGO, Respondent.
No. 33409.
Supreme Court of Florida.
January 19, 1966.
Rehearing Denied March 9, 1966.
*196 Fuller Warren, Miami, and Shorenstein & Lewis, Miami Beach, for petitioners.
Ward & Ward and W.G. Ward, Miami, for respondent.
DREW, Justice.
This case originated as a suit to foreclose a mortgage brought by the bank, the present respondent. A motion to dismiss the complaint as not stating a cause of action was granted with prejudice by the Chancellor and an appeal taken to the District Court of Appeal, 3rd District, 161 So.2d 715, which reversed and remanded. A petition for certiorari based on conflict was then filed in this Court.
Since a movant admits the truth of all factual allegations well-pleaded in a complaint when he moves to dismiss it as failing to state a cause of action, we shall quote the facts as alleged in the complaint:
"1. On or about the date set forth in the promissory note, a copy of which is attached hereto, and made a part hereof, and marked Exhibit `A', the maker thereof [a corporation not a party to the present suit] was indebted to the payee thereof, plaintiff herein, in the principal sum stated in said promissory note which was executed and delivered to the payee.
"2. To secure the payment of said promissory note, the defendants herein, being the owners of record of the fee simple title to the hereinafter described property, executed and delivered to the plaintiff herein a certain mortgage * * * [there follows the recording data and legal description of the property encumbered].
"3. The balance of said promissory note, Exhibit `A' became due on or about July 3, 1962.
"On or about July 3, 1962, the makers of said promissory note, Exhibit `A' herein, duly executed and delivered to your plaintiff, their promissory note, a copy of which is attached hereto, and made a part hereof, and marked Exhibit `C'; which promissory note was in essence an extension of the due date of the outstanding debt due from the makers of said notes to your plaintiff herein.
"4. The plaintiff is now the owner and holder of said promissory notes, and mortgage.
*197 "5. The installments which became due on said promissory note and mortgage on August 16, 1962, and on the 16th day of each and every month thereafter until the filing of this complaint, have not been paid to the plaintiff by the makers of said notes, nor by the defendants, nor by anyone else on behalf of said makers or defendants; and by reason thereof said promissory notes and mortgage are in default."
On this state of facts the Third District Court of Appeal held that the law of guaranty and suretyship as to discharge of sureties by the extension of a note secured without the sureties' consent does not apply to the mortgagors (defendants-appellants) and relied on Anderson v. Trueman.[1]
We have jurisdiction of the case at bar on the ground of conflict of the type delineated in Pinkerton-Hayes Lumber Co., Inc. v. Pope.[2] There Hobson, J. said: "For a District Court of Appeal to accept a decision of this court as controlling precedent, and then to attribute to that decision a patently erroneous and unfounded principal of law, is to create a `real and embarrassing conflict of opinion and authority' as that phrase was used in the case of Ansin v. Thurston, Fla., 101 So.2d 808, 811. It was to resolve conflicts in cases such as this that Article V, Section 4 of the Constitution granted to this court jurisdiction to review by certiorari decisions of the district courts of appeal."[3]
In this case the court of appeal for the Third District relied on, and misinterpreted, Anderson v. Trueman.[4] In Anderson two men gave a bank their promissory note and they and their wives executed a joint mortgage on realty as security. The mortgage incorporated the note which contained a clause stating that "We and each of us consent that the amount of this note or any part hereof may be extended without further notice." The note was twice extended without notice to the wives and then foreclosure proceedings were instituted. The wives contended that the renewal of the note without their consent discharged the mortgage.
On this state of facts this Court held, and correctly so, that the rule as to discharge of sureties had no application and that the mortgage could be foreclosed.
In the present case the District Court made an express finding that there was no authorization of renewal without notice in the original note which was attached to the mortgage, but nevertheless, and despite the fact that the finding of authorization was the foundation for the result in Anderson, and citing Anderson as authority, concluded that the mortgage was not discharged. This was, on the facts, clearly erroneous.
Both the authorities and the cases on the point are unanimous in holding that a suretyship relationship can be created by mortgaging realty or pledging personalty as security for the debts of another as well as by the commonplace endorsement of notes or express contracts of suretyship. These authorities are crystallized in the Restatement of the Law, Security:
p. 225, Scope Note: "The relation arises where two persons are bound to a third who is entitled to but one performance, and where as between the two, one rather than the other should perform. While a variety of transactions may give rise to *198 the relation, six type examples may be noted, which illustrate its more important and usual aspects as follows:
(2) Two persons contract with each other and also with a third person so that one is under a personal and principal obligation to the third, while the second agrees to devote certain property as security to the third."[5]
The note here involved provides:
"Due Date July 3rd, 1962. Chicago, Ill., February 28, 1962 Amount $175,000.00. On demand, and if no demand is made, then, 125 days after date for value received the undersigned promise to pay to the order of
THE EXCHANGE NATIONAL BANK Of Chicago
One Hundred Seventy-Five Thousand Dollars with interest at the rate of 6 per cent per annum, and with interest at seven per cent per annum after maturity until paid. At any time without notice to the undersigned, and regardless of the acceptance of any security for the payment hereof the legal holder hereof at the discretion of such legal holder, may appropriate and apply toward the payment of this note as well before as after maturity hereof any indebtedness due or to become due from such legal holder to any or all of the undersigned, and any moneys, credits or other property belonging to any or all of the undersigned at any time held by the legal holder hereof, on deposit or otherwise; and such legal holder hereby is given a first and prior lien upon such moneys, credits and other property. To secure the payment of such amount due or to become due hereunder, the undersigned, and each of them hereby jointly and severally authorizes irrevocably any attorney of any court of record to appear for the undersigned or any one or more of them in such court, in term time or vacation, and at any time hereafter and confess judgment without process in favor of the legal holder of this note for such amount as may appear unpaid thereon together with costs and reasonable attorneys' fees and to waive and release all errors which may intervene in any such proceeding and to consent to immediate execution upon such judgment, hereby ratifying and confirming all that the said attorneys may do by virtue hereof.
 560 West Luke Street Cole Vending Industries, Inc.
 Address
 KA 6-2341 by: Albert Cole, President."
 Telephone
It is significant that the note does not contain the usual consent to extensions without notice.
The obligation of the endorsers appears on the back of the note in this language:
"For Value Received, we, the undersigned, do hereby jointly and severally unconditionally guarantee the payment of the within note at maturity, in accordance with its terms, or if such maturity is extended, its maturity at any time thereafter with interest at Seven Per Cent (7%) per annum from maturity until paid, and agree to pay all costs, expenses, and attorneys' *199 fees paid or incurred in collecting the same from or in prosecuting any suit against any one or more of the makers, endorsers, or guarantors of said note, and the undersigned hereby waive any and all demand, notice, protest, and notice of protest.
"It is expressly agreed that the extension of time of payment of this note shall not discharge any person secondarily liable, but that payment of said note may be extended from time to time until paid without affecting the liability of the undersigned, or any of them, thereon, and without notice to the undersigned, or any of them.
"To secure the payment of said amount due or to become due hereunder, the undersigned, and each of them jointly and severally hereby authorizes irrevocably any attorney of any court of record to appear for the undersigned or anyone or more of them in such court, in term time or vacation, and at any time hereafter and confess judgment without process in favor of the legal holder of this note for such amount as may appear unpaid thereon, together with costs and reasonable attorneys' fees, and to waive and release all errors which may intervene in any such proceeding and to consent to immediate execution upon such judgment, hereby ratifying and confirming all that the said attorney may do by virtue hereof. [Italics supplied]
 Albert Cole
 Richard Cole"
Likewise, it is significant that the endorsers did agree to extensions without notice but Frieda L. Cole, his wife, did not sign the endorsement provision on the back of the note, and in fact did not sign the note at all. It is the extension without her consent which vitiated the mortgage signed by her.
Once a suretyship relation is demonstrated then the rule applies that any binding extension of time to the debtor without the consent of the surety discharges the surety. This rule was conceded in Anderson. The court then applied the corollary rule, inapplicable on the facts of the present case, that where the surety consents to the extension of time, either before or after the extension, then he is not discharged.
The fact that the surety is a mortgagor is unimportant. We have been unable to find any Florida case with the exact factual situation presented by the case at bar but there are such in other jurisdictions. These cases, and the authorities, are in accord in holding that the general rules for discharge of a surety apply. A typical statement is found in 2 Jones, On Mortgages, § 1202 where it is stated:
"The extension of the time payment of a mortgage in no way impairs the security * * * as against the mortgagor when the debt is his own, and he remains primarily liable for it. But the rule is different when he has mortgaged his property to secure the debt of another. In such case the mortgagor occupies the position of a surety on the debt, and an extension of the time of payment of that debt without the surety's concurrence discharges the mortgage." (Emphasis supplied.)[6]
For the reasons above stated the decision of the District Court is reversed and remanded for further proceedings not inconsistent *200 with this opinion, but without prejudice to the right of the bank to proceed against the endorsers.
ROBERTS, O'CONNELL and ERVIN, JJ., concur.
THORNAL, C.J., dissents with Opinion.
THOMAS and CALDWELL, JJ., dissent.
THORNAL, Chief Justice (dissenting).
I do not find jurisdictional conflict.
NOTES
[1] 100 Fla. 727, 130 So. 12.
[2] Fla., 1961, 127 So.2d 441, 443.
[3] See also the cases of McBurnette v. Playground Equipment Co., Fla., 1962, 137 So.2d 563; and North Shore Hospital, Inc. v. Barber, Fla., 1962, 143 So.2d 849, 852 which applied this principle.
[4] 1930, 100 Fla. 727, 130 So. 12.
[5] See also on this point: Restatement, Security § 82, comment (b), § 83, comment (b); 2 Jones, On Mortgages, § 1202; 50 Am.Jur., Suretyship § 15.

Typical cases upholding this proposition are: Howard Johnson Inc. of Florida v. Tucker, 5th Cir.1946, 157 F.2d 959, 962; First v. Byrne, 1947, 238 Iowa 712, 28 N.W.2d 509, 172 A.L.R. 1072, 1077, and the leading case of Cross v. Allen, 1891, 141 U.S. 528, 12 S.Ct. 67, 35 L.Ed. 843.
[6] Representative cases in accord are: Campion v. Whitney, 30 Minn. 177, 14 N.W. 806; Chism v. Thomson, 73 Miss. 410, 19 So. 210; First v. Byrne, supra; Diehl v. Davis, 75 Kan. 38, 88 P. 532. See also 50 Am.Jur., Suretyship § 45.