Reva **VINICK**, Appellant,

v.

**FOURTH NATIONAL BANK OF TULSA,**
Appellee.

No. 46594.

Supreme Court of Oklahoma.

Nov. 19, 1974.

Rehearing Denied Feb. 4, 1975.

Houston, Davidson, Jacoby, Main & Nelson, by Kenneth M. Smith, Tulsa, for appellant.

Gable, Gotwals, Rubin, Fox, Johnson & Baker by John Kinslow, Tulsa, for appellee.

WILLIAMS, Vice Chief Justice.

This is an application for certiorari for the review of a judgment of the Court of Appeals, Div. No. 1, which reversed the trial court's judgment for defendant rendered on motion for summary judgment.

In the trial court, plaintiff (appellant) Reva Vinick, filed an action against the defendant (appellee) The Fourth National Bank of Tulsa, seeking her discharge from liability on a certain promissory note held by the bank, which was the original payee. She also sought the return of the collateral security she had deposited for the payment of the note, i.e., her passbook savings account in Home Federal Savings and Loan Co.

A copy of the promissory note, which was for $8500 payable in six months, was attached to her petition as an exhibit. It was a negotiable instrument signed by plaintiff and her brother, Alfred Fisher, as comakers. It recited the deposit of the savings account as collateral security "for the payment of this note, or any other indebtedness of the undersigned * * * including any other note given in extension or renewal hereof, or which may hereafter be contracted * * *"; it also included the following language: "If this note be not paid when due, the *principals,* endorsers and *sureties* hereof expressly waive * * * notice of extension of time, or renewal hereof * * *" (emphasis added). These provisions did not affect the negotiability of the instrument. 12A O.S. 1971, § 3–112.

Plaintiff alleged in effect that her brother was the principal debtor on the note and that she signed it in the capacity "of an accommodation maker/surety". She alleged that before signing the note she had required that a creditor's single-premium term insurance policy for $8500 be procured upon the life of her brother, for a term coincident with the six months' life of the note, and that this was done "as an integral part of the agreement between the parties whereby the loan was made". She further alleged that shortly before the note was due, her brother procured an extension thereof for an additional six months' period, without notice to her, and without an extension or renewal of the creditor's single-premium term insurance policy; and that two months later, during the extended term, her brother died without paying the note. Her petition characterized the extension of the note without a corresponding extension of the insurance policy as "a prejudicial act" which entitled her to exoneration on the note.

Extensive pre-trial discovery procedures were pursued by both parties, and defendant's motion for summary judgment, later filed, was submitted upon answers to interrogatories, affidavits and depositions.

The judgment of the trial court among other things sustained the motion for summary judgment for defendant upon the plaintiff's petition.

In this Court, plaintiff argues two propositions. The first is to the effect that the trial court erred in failing to accept plaintiff's "version of the facts as to all points upon which there was a question of fact." In this connection, there is a letter in the nature of a memorandum opinion in the record in which the trial judge explained the basis of his ruling. In this letter he said "(1) that the condition imposed as to the plaintiff becoming an accommodation maker and pledging her collateral in fact was met to the satisfaction of the plaintiff before she signed the note, (2) that while the plaintiff did not contemplate the extension of the note, she agreed to the continued use of her pledged collateral if the note should be extended beyond the due date, and (3) that the plaintiff made no condition to the principal maker or the defendant that in the event the note should be extended that renewal of the insurance must be made on the principal maker in order for her pledged collateral to remain on the note".

Plaintiff argues that the three findings all relate to points that were "highly disputed", citing the answers to interrogatories and her own affidavit in response to the motion for summary judgment, but without specifying the particular portions of the answers and affidavit raising the alleged conflict.

After a careful examination of the answers to interrogatories, appellant's own affidavit and the depositions which were also before the trial court, we find uncontradicted evidence in support of all three findings.

In her affidavit, plaintiff said that after she and her brother had gone to the bank and after a discussion as to the pledging of her savings account as collateral security, she " * * * requested that *my brother* take out credit life insurance on his life during the six months term of the note";

that this request was made in the presence of the bank official "who heard my request *to my brother*"; that the bank official then arranged for the insurance "for a term coincident with the six months term of the loan which was to be from June 29, 1971 until December 27, 1971; that "there was never any mention on the part of anyone about the possibility or the likelihood that the note would be extended" and that after her requirements as to insurance had been met, "my brother and I both signed the note" (emphasis added). In pertinent part, her testimony in her deposition is in exact accordance with the statements quoted above from her affidavit. She testified:

"A.  *  *  *  because they told me it would be repaid [sic] for in six months, I had nothing to worry about.

"Q.  Who is 'they'?

"A.  My brother.

"*  *  *

"Q.  But you never told Mr. Hebert [the bank official] that you did not want the note extended?

"A.  No, it was never brought up. It was never even mentioned about an extension."

There is no evidence or allegation in the record before us that plaintiff was "hurried" or "rushed" into signing the note, or that she was deceived by anyone as to the contents or legal effect of the note she admittedly signed as comaker.

It may be conceded that the answers to interrogatories filed on behalf of the appellee bank raised issues of fact as to (1) whether plaintiff's requirement as to credit insurance was made before or after she signed the note and (2) whether the appellee bank was apprised of the fact that the entire proceeds of the note would go to plaintiff's brother. However, as we have seen, the trial court resolved the first issue in her favor by finding that the requirement as to credit insurance was made (and met) before the note was signed. The second issue was pertinent only on the question of whether plaintiff was, as she alleged, an accommodation party only. This issue was also resolved in her favor by the finding that she was an accommodation maker.

In summary, there was no conflict in the evidence on the following points: (1) as a condition for signing the note and pledging her collateral, plaintiff required *her brother* to obtain credit insurance for the six months term of the note; (2) after this was done, she voluntarily signed the note as one of the makers, or promisors, without being deceived in any way as to the contents or legal effect thereof; (3) in the note she affirmatively agreed to the continued use of her collateral in case of an extension thereof, and affirmatively agreed to the extension or renewal of the note without notice to her; (4) she did not require that, as a condition for the renewal of the note, the credit insurance also be extended or renewed; (5) the note was thereafter extended without notice to her, her brother died during the extended term, and the note is now past due and unpaid. As above noted, to the extent that there was a conflict in the evidence as to whether the bank had notice that she signed the note solely for the accommodation of her brother, the conflict was resolved in her favor by the trial court's judgment, which treated her as an accommodation maker.

Upon these facts, the rights of the parties are determined under the following applicable portions of the Uniform Commercial Code, 12A O.S.1971 (emphasis added in all cases):

"(1) An accommodation party is one who signs the instrument *in any capacity* for the purpose of lending his name to another party to it." § 3–415(1)

"(2) When the instrument has been taken for value before it is due the accommodation party is liable *in the capacity in which he has signed even though the taker knows of the accommodation.*" § 3–415(2).

█ Under the uncontradicted facts and plaintiff's own pleadings, her signature appears on the note as that of a comaker.

Since she admittedly signed it as an accommodation to her brother, under § 3–415(1) she was an accommodation party—more specifically an accommodation *maker*. Since the appellee bank admittedly took the note here concerned for value before it was due, under § 3–415(2) plaintiff is liable on the note in the capacity in which she signed (that of a maker) even though the bank knew of her accommodation status. As a maker, she is jointly and severally liable on the note. § 3–118(e) & (f).

It may be observed in passing that § 3–415(1) changed the prior statutory definition of "accommodation party" found in the former Negotiable Instruments Law, 48 O.S.1961, § 76. It is said that the purpose of the change was "quite frankly to treat accommodation parties as sureties" and that "It is important to note that the accommodation party is liable in the capacity in which he signs". See the Oklahoma Code Comment following 12A Okl.St.Ann., § 3–415, at page 237. The prior law was also changed by the provision of § 3–302(2) that "A payee may be a holder in due course". For these reasons, and also because the benefits of § 3–415(2) are not limited to a holder in due course, it is immaterial that the note here concerned is still in the hands of the original payee.

Plaintiff's second proposition is that the trial court erred "by ruling as a matter of law that the terms of the promissory note precluded appellant from utilizing suretyship defenses" to bring about the release of the collateral security.

■ We do not agree that the trial court ruled that *the terms of the promissory note* precluded the use of suretyship defenses. He ruled, in effect, that considering *all* of the evidence before him, including that portion (in appellant's affidavit and deposition) that presumably would have been parol evidence at the trial, and after resolving all conflicts in appellant's favor, plaintiff was not entitled to exoneration on the note or the release of the collateral security. As we have seen, under plaintiff's own evidence and the applicable law, she was jointly and severally liable on the note as a *maker* thereof who had agreed in the note to the continued use of the collateral, and had expressly waived notice as to the extension or renewal with no condition attached as to the credit insurance.

Plaintiff also suggests that parol evidence would have been admissible at the trial of this case under the second sentence of § 3–415 (3), and this is correct. However, in this case the proffered parol evidence concerned only the question of whether she signed the note for the accommodation of her brother, and this issue was resolved in her favor by the trial court's judgment. She offered no parol evidence that extension of the credit insurance was a condition for the renewal of the note.

■ The cases cited in plaintiff's brief are not helpful to her. In Marcus v. Fabrikant (N.Y.1969) 34 Misc.2d 945, 229 N.Y.S.2d 304, the rights of the parties depended in part upon certain notations on the reverse side of a check posted as collateral for the payment of a note. The court noted that "Several aspects of the legend employed by the parties on the reverse side of the check call for explanation" and said that "The court does not regard this agreement as complete on its face so as to exclude further explanation of its terms * * *". In the case now before us, the note is complete and regular on its face and contains no ambiguous language. In Diehl v. Davis (1907) 75 Kan. 38, 88 P. 532, the wife occupied the position of surety upon the note, which had been extended without her consent. In the instant case, although plaintiff was actually an accommodation party only, she admittedly signed the note as one of the makers thereof, and, by virtue of § 3–415(2) is liable as a matter of law in that capacity and not merely as a surety, even though defendant knew of her accommodation status.

In an amendment to her petition, plaintiff alleged that defendant's agent, the bank official, "misrepresented the true situation to plaintiff by procuring insurance

only for the six months term of the note", and by "neglecting to explain" to her that the note might be extended without notice to her, in which event the credit insurance would not be in force during the extended period; that she signed the note as an accommodation maker in reliance upon his "representations" that the credit insurance would remain in force during the continuance of her obligation on the note; and that "based on the aforesaid facts" defendant is estopped to deny that plaintiff's liability on the note was "expressly" conditioned upon the maintenance in force of the credit insurance "at all times until the note was finally declared due and payable by defendant bank".

However, plaintiff introduced no evidence, parol or otherwise, in support of "the aforesaid facts". On the contrary, in her affidavit she said that the requirement as to credit insurance was made to her brother, who was the accommodated party, and that her requirement was that he procure credit insurance on his life "during the six months term of the note" and that thereafter the bank official arranged for the insurance "for a term coincident with the six months term of the note which was to be from June 29, 1971 until December 27, 1971". There was no evidence of any representation, or misrepresentation, by the bank official that the credit insurance policy would be kept in force beyond its expiration date.

Since all of the evidence concerning the controverted issue of estoppel is against the existence of an estoppel, it cannot be said that the trial court decided a contested question of fact adversely to her in ruling on the motion for summary judgment.

The application for certiorari is granted; the judgment of the Court of Appeals is vacated; the judgment of the trial court is affirmed and the cause is remanded to the trial court for further proceedings.

DAVISON, C. J., and IRWIN, LAVENDER, BARNES, SIMMS and DOOLIN, JJ., concur.

HODGES, J., dissents.